**NICOLI v. BRIGGS, Immigration Inspector.**

No. 1355.

Circuit Court of Appeals, Tenth Circuit.

April 7, 1936.

William G. Lynch, of Kansas City, Mo., for appellant.

Summerfield S. Alexander, U. S. Atty., and Homer Davis, Asst. U. S. Atty., both of Topeka, Kan., for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

Nicoli, confessedly an alien, pled guilty to an indictment charging him with the sale on December 30, 1932, of narcotics not from the original stamped package and upon which the tax had not been paid. The statute, 8 U.S.C.A. § 156a, directing deportation of aliens who were convicted after February 18, 1931, of violating the narcotic act, the Secretary of Labor, after a hearing, ordered his return to Italy. Thereupon this petition for a writ of habeas corpus was sued out, alleging that the charge in the warrant of arrest was multiplicitous; that petitioner was not represented by counsel at the hearing under the warrant; that several immigration inspectors conducted the hearings; that petitioner was a morphine addict when the morphine was sold. Issue was joined and after a trial the petition for the writ was denied. This appeal follows.

The United States has plenary power to admit, exclude, or deport aliens, absolutely or upon any conditions it cares to impose. Such right is inherent in sovereignty and inalienable; it may be exercised in war and peace, and is essential to the safety, independence, and welfare of its citizens. Unless a claim of citizenship is made and supported by substantial evi-

dence, Congress may repose the power to deport in the executive department. United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221; Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938; United States ex rel. Turner v. Williams, 194 U.S. 279, 24 S. Ct. 719, 48 L.Ed. 979; Fong Yue Ting v. United States, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905. Deportation proceedings are civil and not criminal; being confided to the executive department, evidentiary rules followed in judicial proceedings need not be adhered to. In order to attack successfully a deportation order in a judicial proceeding, it must be shown that an essentially fair hearing was denied, or that the findings made are without substantial support in the evidence, or that the law does not authorize deportation upon the facts found. If the fundamentals of a fair hearing are accorded—to be apprised of the charges, to hear the evidence offered in support thereof, to have the opportunity to offer evidence on his own behalf, and the right of counsel if desired—the order is not vitiated because evidence is received which would be incompetent in a court of law, or because the alien is in custody when the hearing is held, or does not have counsel, or because the finding is contrary to the weight of the evidence. Low Wah Suey v. Backus, 225 U.S. 460, 32 S.Ct. 734, 56 L.Ed. 1165; United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221; United States ex rel. Tisi v. Tod, 264 U.S. 131, 44 S.Ct. 260, 68 L. Ed. 590; United States ex rel. Vajtauer v. Com'r of Immigration, 273 U.S. 103, 106, 47 S.Ct. 302, 304, 71 L.Ed. 560. In the latter case, Mr. Justice Stone said:

"Deportation without a fair hearing or on charges unsupported by any evidence is a denial of due process which may be corrected on habeas corpus. * * * But a want of due process is not established by showing merely that the decision is erroneous, * * * or that incompetent evidence was received and considered. * * Upon a collateral review in habeas corpus proceedings, it is sufficient that there was some evidence from which the conclusion of the administrative tribunal could be deduced and that it committed no error so flagrant as to convince a court of the essential unfairness of the trial."

In considering the fairness of the hearing, it should be noted that appellant at the hearing and in the court below admitted he was an alien, and that he had entered a plea of guilty to a violation of the narcotic laws and had been sentenced therefor. There was, then, not much to be heard. The hearing appears to have been conducted in accord with executive rules 22-5(a) and 22-5(b) copied in the margin in United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, at page 152, 44 S.Ct. 54, 55, 68 L.Ed. 221, and impliedly at least approved by that court. Appellant speaks English, having lived in this country since he was three years old; his answers indicate an intelligence above the average.

On March 22, 1933, about three weeks after appellant's incarceration in the Leavenworth penitentiary, Inspector Briggs asked appellant if he was willing to make a voluntary statement concerning his right to remain in the United States with the understanding it might be used against him in deportation proceedings. Appellant said he was, and stated he was born in the United States. The hearing was then deferred to investigate his birthplace. It was resumed on May 9th when Briggs showed him a statement by his father, taken by Inspector Hunter, disclosing he was born in Italy and that he came to New York in 1906; and was asked, "Is this statement by your father correct?" to which appellant answered, "Yes, it is correct. I have been here so long that I thought I was a citizen." Other questions and answers were:

"Q. What is the nature of the crime for which you are now serving sentence? A. For selling narcotics.

"Q. When was that offense committed? A. I was arrested in Kansas City, Missouri, on January 18th, 1933, and was sentenced in the U. S. Court at Kansas City, Missouri, on March 4th, 1933, to a term of three (3) years in this place."

On June 5th a warrant of arrest issued prefaced as follows:

"Whereas, from evidence submitted to me, it appears that the alien, Renet Nicoli, who landed at the port of New York, N. Y., subsequent to the 1st day of Jan., 1906, has been found in the United States in violation of the immigration act of February 18, 1931, in that since February 18, 1931, he has been convicted and sentenced for violation of (or conspiracy to violate) a statute of the United States taxing, prohibiting or regulating the manufacturing, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca

leaves, heroin, or any sale, derivative, or preparation of opium or coca leaves, and is not within any exception to the aforementioned act."

On June 13th a hearing under the warrant was held in the penitentiary, conducted by the same inspector who had conducted the other two. Appellant was informed the purpose of the hearing was to afford him an opportunity to show cause why he should not be deported; the warrant was read and carefully explained; appellant inspected the warrant and the evidence upon which it was issued; he was advised of his right to have counsel and declined. Appellant read his preliminary statement and said it was correct; he admitted he was the person indicted and sentenced for violating the narcotic laws. He was shown his father's statement and asked if there was any reason why it should not be made a part of the record, to which he replied, "No, only I have been here so long that I thought that I·was telling the truth when I said that I was a citizen." The only reason offered by appellant why he should not be deported was "I don't see how I can be deported after being here for so long a time. I have been here over twenty-five years." His intelligence is indicated by this circumstance: The deportation statute was read to him and when asked if he understood it, he summarized it shortly and accurately as follows: "Yes, if I am deported to Italy I must stay there until after one year before I can try and come back but if I am sent away from here I will never come back." The last question and the laconic answer were: "Q. Are you ready and willing that your case be now closed and the record as it now stands forwarded to the Secretary of Labor at Washington, D. C., for her decision? A. You can do what you want with it."

On July 21, 1933, the warrant of deportation was issued, with substantially the same preamble as in the warrant of arrest.

■ These hearings withstand the closest scrutiny. All were conducted by the same inspector, although it would not be fatal were it otherwise. That the father's statement which was exhibited to appellant to refresh his recollection was procured by another inspector is of no moment; appellant's memory of his birthplace could be refreshed by any document, sworn or unsworn, in any court. After appellant admitted the fact, it was entirely proper to attach his father's statement as an exhibit. These grounds are not even, respectable make weights.

■ The preamble to the warrant of arrest is in bad form; instead of simply reciting that he had been sentenced for selling morphine, it recited he had violated a statute which catalogues many ways of transgressing. But it was not misleading; appellant knew what his crime was, for in his statement made long before the warrant was issued, he said he was sentenced for "selling narcotics." The objectionable generality of the recital in the warrant did not in this case deny appellant a fair hearing; but such diffuse and prolix recitals may sometime confuse and should be superseded by an unadorned simple narrative of the facts. In any event, appellant waived the point when he failed to object when the warrant was explained to him and when he examined it personally. Peerless Inv. Co. v. Commissioner of Internal Revenue (C.C.A.9) 80 F.(2d) 427; Kjar v. Doak (C.C.A.7) 61 F.(2d) 566; United States ex rel. Medich v. Burmaster (C.C.A.8) 24 F.(2d) 57.

■ Upon the trial in the lower court, but not upon the hearing before the inspector, appellant testified he was an addict when he made the sale in question. It is now claimed that the statute does not authorize his deportation. The statute (8 U.S.C.A. § 156a) reads that "Any alien (except an addict who is not a dealer in, or peddler of, any of the narcotic drugs mentioned in this section)" who shall be convicted and sentenced for violating the narcotic laws shall be deported.

Resort is had to lexicographers to persuade that one sale does not make appellant either a dealer or a peddler. In interpreting words used in statutes, the entire statutory plan and the reasons therefor should be kept in mind. One sale is a crime, either of unstamped narcotics by any one or of stamped narcotics by those not authorized to sell them. There are no legitimate "dealers" in unstamped drugs. In defining dealers in stamped drugs, the statute defines a dealer as "Every person who sells, or offers for sale, any of said drugs." 26 U.S.C.A. § 1391(c) and (d). Congress could not well define a dealer in unstamped drugs, for none such was recognized; but Congress has enacted that one sale is a crime, and no reason is suggested why one unauthorized sale of a stamped drug should make the seller a

dealer, and yet require two sales of un-stamped drugs to accomplish the same purpose.

A broader view of the excepting clause brings us to the same conclusion. Congress realized that many aliens were victims of this consuming habit; it did not wish to impose the penalty of deportation upon those unfortunates who transgress the law in order to procure a drug which staves off torture. But it is not necessary to sell the drug to satisfy the craving of an addict. In an exception within an excepting parenthetical clause, brevity of expression is to be expected; and by the use of "dealers or peddlers" we have no doubt Congress intended to except addicts who did not violate the statutes prohibiting illegal sales. Cf. O'Neill v. United States (C.C.A.8) 19 F.(2d) 322.

█ The warrant of arrest recited that appellant "is not within any exception to the aforementioned act." Each and every allegation of the warrant was carefully explained to appellant at the hearing. It would appear therefore that appellant was then advised there were exceptions in the act, and either did not inquire as to them or, if he did, did not claim to fall within an excepted class. Furthermore, the merits of the cause cannot be tried de novo on habeas corpus. If it were a defense to the charge that appellant was an addict, that defense should have been asserted at the hearing before the inspector. The government then would have had the opportunity to investigate the truthfulness of the facts upon which the claim of exemption rested.

█ But, it is contended, aliens who are addicts but not dealers or peddlers may not be deported, and it was for the government to establish that appellant did not come within the exception. The rule is otherwise; having established that appellant was an alien who was convicted and sentenced for violation of the narcotic laws after February 18, 1931, the government's case was made; if appellant claimed to be within any of the exceptions in the statute, it was his duty then to assert and establish such claim. Even in criminal proceedings where the rules are much more strict, it has uniformly been held that it is unnecessary for the government either to allege or prove that the defendant does not come within a class ex-cepted by the statute. Where there is a general provision defining the elements of an offense, neither the indictment nor the proof need negative exceptions. For narcotic cases, see Manning v. United States (C.C.A.8) 275 F. 29, opinion by Judge Walter H. Sanborn; Weare v. United States (C.C.A.8) 1 F.(2d) 617, opinion by Judge Kenyon; Wallace v. United States (C.C.A.7) 243 F. 300; for liquor cases, see Carnahan v. United States (C.C.A.8) 35 F. (2d) 96, 67 A.L.R. 1035; Walker v. United States (C.C.A.8) 79 F.(2d) 269; and for other cases, see McKelvey v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L. Ed. 301; Hill v. Smith, 260 U.S. 592, 43 S.Ct. 219, 67 L.Ed. 419; Javierre v. Central Altagracia, 217 U.S. 502, 30 S.Ct. 598, 54 L.Ed. 859. One sentence in United States v. Cook, 17 Wall. 168, 21 L.Ed. 538, is cited contra. That opinion, read as a whole, does not appear to be at variance with the later case of McKelvey v. United States, supra. It holds, as we read it, that if it is impossible to frame the statutory charge without negativing the exception, then it should be negatived; but where, as here, the statute states a clear, definite, and general offense, and then excepts certain classes or acts from its scope, the exception need not be negatived. Nor is it a matter of importance whether the excepting clause is in parenthesis, or set off by commas, at the beginning of the sentence, or follows a proviso at the end.

█ A fortiori, it is not necessary in an administrative hearing that the government, either in the warrant or at the hearing, negative one by one all the classes excepted by the act. This being so, the warrant of deportation is not vitiated because of counsel's assertion that appellant did not know the law when his hearing was had.

Appellant has been in this country thirty years and has not renounced his allegiance to the country of his birth; here by sufferance only, he has violated our laws by trafficking in narcotics. He admits now that he is an alien and his guilt. He has had one fair hearing; he is not entitled to another, and if one were had, there necessarily must be, on his own statements, the same outcome.

The order is affirmed. Let the mandate issue forthwith.