SMITH et al. v. McGRATH, Attorney General et al.

Civ. No. 5690.

United States District Court
D. Maryland.

March 10, 1952.

R. Palmer Ingram, Ellis Levin and Joseph M. Wyatt, Baltimore, Md., for plaintiffs.

Bernard J. Flynn, U. S. Atty., James B. Murphy, Asst. U. S. Atty., Baltimore, Md., for defendants.

CHESNUT, District Judge.

The plaintiffs in this case are seeking a declaratory judgment and an injunction to prevent the enforcement by the defendants against the plaintiffs of the provisions of the Act of Congress of January 2, 1951, c. 1194, 64 Stat. 1135, 15 U.S.C.A. §§ 1171–1177, sometimes referred to as the Johnson Act. The case has been heard upon complaint, answer, evidence and argument of counsel. There is no procedural objection interposed by the defendants. The principal question in the case is whether the activities of the plaintiffs constitute them "dealers" in coin machines within the meaning of the Act.

The main purpose of the Act is to aid the States in the local enforcement of anti-gambling laws by prohibiting the interstate transportation of such gambling devices.

Section 1171 defines the term "gambling devices". It includes certain so-called slot machines or coin machines, including such machines owned and operated by the plaintiffs in this case.

Section 1172 prohibits the interstate transportation of such gambling devices except where the interstate transportation is to a place in another State which has enacted a law providing for the exemption of such State from the provisions of the Act.

Section 1173 requires manufacturers of and dealers in gambling devices to register with the Attorney General, and to file inventory and sales and delivery records monthly. It also requires the manufacturer or dealer to mark and number each gambling device so that it is individually identifiable. It is made unlawful for manufacturers or dealers to sell, deliver or ship gambling devices not so marked, and it is also made unlawful for them to recondition, repair, sell, deliver or ship such machines without having registered or without filing monthly reports.

And by section 1174 the shipping packages for such gambling devices or repair parts thereof must be plainly marked.

Section 1175 provides that it shall be unlawful to manufacture, recondition,. repair, sell, transport, possess or *use* any gambling devices in the District of Columbia, in any possession of the United States, within Indian country or within the maritime and territorial jurisdiction of the United States (it will be noted that the prohibition does not apply to the use of gambling devices within the State).

Section 1176 provides maximum penalties for violation of any provision of the Act, to be not more than a fine of $5,000 or imprisonment of not more than two years, or both.

Section 1177 provides that gambling devices transported, delivered, shipped, manufactured, reconditioned, repaired, sold, disposed of, received, possessed or *used* in violation of the provisions of the Act shall be seized and forfeited to the United States.

The facts of the case with respect to the activities of the plaintiffs as stated in the complaint and fully supported by the evidence are not in dispute. Two of the plaintiffs are Maryland corporations engaged in conducting amusement parks or resorts on or near the Chesapeake Bay and within about 25 miles or less of Washington. One such park is in Anne Arundel County in the State of Maryland, and the other in Calvert County. The third plaintiff is a partnership which owns and operates about 100 such gambling machines placed in various locations in Anne Arundel County on a rental or percentage basis of about 50% to the owner and 50% to the proprietor of the location. None of the plaintiffs have at any time in their present business engaged in any way in interstate transportation of such machines. They have bought and from time to time may buy the machines but only from reputable and established dealers in the State of Maryland. They have never ordered any of such machines for delivery to them interstate. They maintain their own service employees for repair of machines. When occasionally a repair part must be ordered from a dealer it is bought from a Maryland dealer and delivered in Maryland. One of the plaintiffs, the Southern Maryland Development Company, Inc., owning and operating a bathing beach known as Triton Beach Club in Anne Arundel County (the whole park consisting of about 200 acres) has not bought any machines anywhere since the passage of the Act. The two corporate plaintiffs in their amusement parks have many other types of machines and devices for the amusement of their patrons. The ownership, use and operation of all gambling devices possessed by the plaintiffs are lawful in the respective Counties of Anne Arundel and Calvert in the State of Maryland where they alone are used, under Acts of the General Assembly of Maryland. All taxes, federal state and county, have been duly paid by the plaintiffs respectively. Shortly after the passage of the Act the plaintiffs in good faith inquired at the office of the Attorney General of the United States whether his office interpreted the Act as applicable to their activities, but were unable to obtain a ruling upon the subject. Subsequently, and before filing the present complaint, their places of business were visited by representatives of the F. B. I. who made particular inquiries about the possession of such machines and in some cases demand was made for their inspection, and attention was called to the provisions of the Act with regard to registration and reports. The plaintiffs also learned from the public press that in numerous other States F. B. I. Agents had seized such gambling devices. The plaintiffs respectively, although maintaining that they were not subject to the provisions of the Act, nevertheless as a matter of caution did file certain statements and itemized lists of their machines with the Attorney General. They contend, however, that they are not obliged to continue that form of compliance with the Act.

My conclusion of law is that the activities of the plaintiffs respectively do not bring them within the scope of the Act and they are therefore entitled to a declaratory judgment to that effect. They are also entitled to an injunction to restrain the defendants from enforcing the provisions of the Act against them by requiring registration or monthly reports or seizure of any of the machines owned and operated by the plaintiffs, unless the particular machine is shown to have been transported interstate in violation of the Act.

■■ The controlling point in the case is the very narrow one of construction of the meaning of the word "dealer" contained in section 1173. There are two well known elementary rules of construction that are applicable here. One is that the words used in the statute are to be understood in their ordinary meaning and acceptation unless the context of the Act as a whole reasonably indicates to the contrary. Another rule is that the statute is highly penal in

character and therefore should be strictly construed.

■■ It is clear enough that the ordinary acceptation of the term "dealer" as applied to an article or commodity, means one who buys and sells that commodity in the usual course of trade. The undisputed facts are that no one of the plaintiffs does sell any of these gambling devices. The evidence shows that they constitute assets of the respective plaintiffs used in their activities, and these activities are by the local law legal in the places where they are exercised in the State of Maryland. The plaintiffs own, use and operate the machines but they do not sell them. With respect to a very few of the machines one of the plaintiffs has at times surrendered or traded them in for an allowance on the purchase price of a new machine purchased in the State of Maryland and not ordered from outside of the State.

Counsel for the defendants contend that by the proper construction of the word "dealer" as contained in the Act, it should be given a broader meaning to include the relation of the plaintiffs to the gambling devices. In other words, it is contended that the word "dealer" as used in this Act should be construed to include the plaintiffs who are owners and operators of the machines. It is admitted by counsel for the defendants that this is an extension of the application of the word "dealer" beyond the ordinary meaning of the word. No authority is cited for this expanded and unusual definition of the term, which is not defined in the Act. I find no basis for the contention from the context of the Act as a whole. The main purpose of the Act is to aid the States in the enforcement of their local laws. There is no local law in the Counties in Maryland in which the particular gambling devices are owned, used and operated contrary to their ownership, use or operation. The main purpose of the Act being to prohibit interstate transportation of gambling devices for the purposes mentioned, the provisions of section 1173 with regard to the requirements made of manufacturers and dealers is incidental or merely for implementation of the Act to accomplish its main purpose. It is not even contended by the defendants that the plaintiffs are manufacturers, and the evidence clearly shows that in no way have any of the defendants been engaged at any time since the passage of the Act in interstate commerce with regard to the machines.

■ There is another important reason against the unusual and expanded definition of the term "dealer" as used in the Act. The Act was passed pursuant to the constitutional power of Congress to regulate interstate commerce. To extend it as contended for by the defendants, I think, gives the Act an effect beyond the constitutional power of Congress with respect to purely intrastate transactions. It is another elementary rule of construction that an interpretation of an Act which would make it unconstitutional will not be adopted unless imperatively required by the wording of the Act or the context of the Act as a whole. This is not the case here.

It should, of course, be unnecessary to add that the question presented to the court is essentially only a question of construction of the meaning of the Act. Nothing that has been said in that connection has any bearing on or relation to the question as to the public policy involved in prohibiting or permitting the ownership, use or operation of gambling devices of any nature. That is a matter of State policy.

As the Act is a very recent one it is not surprising that there are few if any prior judicial decisions upon its application. The only one that has been called to my attention is a decision of District Judge Christenberry in a recently decided case in the Eastern District of Louisiana, No. 729 Miscellaneous, entitled United States of America v. 200 Gambling Devices, D.C., 103 F. Supp. 886, where under facts less favorable than in the instant case the conclusion of law with regard to the meaning of the word "dealer" was that it should be limited to activities of buying and selling the machines, that is, in accordance with the ordinary acceptation of the word. And I find nothing in the legislative history of the Act as contained in the United States Code

Congressional Service, 1950, Vol. 2, pp. 4240–4257, to the contrary.

For these reasons I conclude that the plaintiffs are entitled to a declaratory judgment as above stated and to an injunction as prayed for with the limitation above mentioned. Counsel may present the appropriate orders in due course.