UNITED STATES v. ONE HUNDRED THIRTY–NINE GAMBLING DEVICES ALIAS SLOT MACHINES, MORE OR LESS et al.

UNITED STATES v. FOUR HUNDRED NINETY–SIX GAMBLING DEVICES ALIAS SLOT MACHINES, MORE OR LESS et al.

Nos. 1058–D, 1059–D.

United States District Court
E. D. Illinois.

Dec. 12, 1952.

William W. Hart, U. S. Atty. and Ray M. Foreman, Asst. U. S. Atty., Danville, Ill., for libelant.

Kramer, Campbell, Costello & Wiechert, by R. E. Costello, East St. Louis, Ill., for claimants Everett Smith, R. H. Schneider and Kermit Reay.

PLATT, District Judge.

Two libel suits have been consolidated for trial and decision by this court. The libels allege that special agents of the Federal Bureau of Investigation seized 139 gambling devices together with material

parts therefor in one case and 496 gambling devices along with parts in the other case; that all of the machines, commonly known as slot machines, were seized in East St. Louis, St. Clair County, Illinois. The government seeks to condemn these machines and parts for the reason that they were possessed and used at the places set forth in the libels by persons who were not registered as dealers as required by 15 U.S.C.A. § 1171ff., referred to hereafter as the Johnson Act. After monition, Everett Smith and R. H. Schneider filed answer in one suit and Kermit Reay filed answer in the other suit. The answers deny the violation of the statute. Claimants Smith and Schneider allege that they are the owners of 139 machines. Claimant Kermit Reay alleges he is the owner of all but three of the 496 seized machines. The answers further deny that the claimants were dealers under the terms of the Act and required to register. Claimants further allege that the Act is so vague, uncertain, and indefinite in defining a dealer that it violates the Fifth Amendment of the Constitution and is therefore unconstitutional. Claimants pray the return of the machines.

The government and the claimants entered into a stipulation as to certain facts in each case, viz., (1) That the court has jurisdiction of the subject matter of the cause and the parties hereto; (2) That prior to and on January 2, 1951 and until March 5, 1952 the claimants were operating and conducting their businesses in East St. Louis, St. Clair County, Illinois; (3) That prior to January 2, 1951 claimants had acquired practically all of the gambling devices, commonly known as slot machines; (4) That subsequent to January 1, 1951, the claimants had not purchased, sold, or transported in interstate commerce or caused to be purchased, sold, or transported in interstate commerce any coin operated gambling devices, commonly known as slot machines, and particularly did not purchase, sell, or transport in interstate commerce any of the said gambling devices or any sub-assembly or material part or parts of said slot machines; (5) That the operations and transactions of the claimants

as carried out or performed by them in the course of their businesses, both prior or subsequent to January 1, 1951 were as follows: That some of said devices were kept in storage and the remainder of them were placed in business houses of certain persons, but the claimants retained keys thereto so that no one other than claimants had access to the mechanism of said machines or the money contained therein. The claimants received 50 percent of the coins in each machine and the proprietor of the establishment in which the machines were located received the other 50 percent. The claimants maintained the gambling devices in good operating condition and repaired or replaced any gambling devices which failed to function properly for the purposes intended from machines kept in storage and from the sub-assembly and material parts kept at their places of business; that it was the usual and customary policy when said machines were opened by the claimants or their agents or employees where they were located, for the purpose of either removing the money from the said machines or to repair them, for the owner of the establishment to be present; (6) That on March 5, 1952 in the Eastern District of Illinois the devices herein involved were seized by the special agents of the Federal Bureau of Investigation, Department of Justice, pursuant to search warrants issued by the United States Commissioners, and that the devices are now in the custody and possession of Carl J. Werner, United States Marshal for the Eastern District of Illinois; (7) That neither claimant has ever registered as a "dealer" under the terms and provisions of the Johnson Act, nor have any of the persons in whose establishments the devices were placed registered in accordance with said Act.

Testimony was offered by the government and claimant Reay in one suit. Frank Newgent testified for the government that he owned three of the seized gambling devices and operated them for a short time in his place of business in East St. Louis. The local authorities ordered him to stop and he stored them in Reay's place; that he purchased three machines

in the latter part of 1950 from Reay. He traded one device to Reay after January 2, 1951 for another machine. Reay offered evidence that these machines were sold to Newgent at the request of a friend of Newgent's in the latter part of 1949, and one machine was traded to him early in 1950. Other evidence was offered as to the date of the trade. The court finds that these machines were kept by Newgent for operation and not intended to be sold or entered in interstate commerce. The court further finds from all the evidence that Reay made this one sale after January 2, 1951, the effective date of the Johnson Act. Newgent has filed no claim or answer.

■ After the claimants had filed their brief the government attorneys filed reply brief and a motion to strike the claimants' answers and to dismiss them as parties to the suit. The theory of the government is that the claimants admit the nature of the gambling devices to be slot machines by the stipulation; that slot machines are per se pernicious and dangerous to the public welfare; and they are subject to confiscation and destruction by the Illinois authorities wherever they are found, by virtue of the Illinois Criminal Code, Ch. 38, Sec. 342, Ill. Rev.Stat.1951;[1] that this statute has been held constitutional in the State of Illinois.[2] Libelant contends further that the Illinois courts have held that there can be no property in slot machines.[3] The government therefore maintains since the claimants have no interest in the subject matter of this suit their answers should be stricken and they should be dismissed by the court.

The fallacy of the government's position is quite clear. Claimants may have no property rights in the slot machines under the Illinois law. They may have violated the Illinois statute in possessing the machines.[4] But the question here is whether claimants have violated the Johnson Act. The claimants have a locus standi in this court and have a right to defend the suit. McVeigh v. United States, 11 Wall. 259–268, 20 L.Ed. 80. Even the Supreme Court of Illinois transferred a cause to the Appellate Court to determine if the device was a slot machine and subject to confiscation.[5] Similarly, here claimants may defend to determine whether there has been a violation of the statute. Furthermore, libelant should not be permitted to stipulate proof with the claimants and then ask that the court strike the answer and dismiss claimants from the suit. There can be but one conclusion that this court can reach. The motion to strike claimants' answer and dismiss them from the suit should be denied.

■ The court is faced with a determination as to whether these gambling devices come within the purview of the Johnson Act and are subject to seizure and forfeiture as provided therein. Section 7 of the Johnson Act provides in part as follows:

"Any gambling device * * * possessed, or used in violation of the provisions of this chapter shall be seized and forfeited to the United States. All provisions of law relating to the seizure, * * * and judicial forfeiture, and condemnation of * * * merchandise * * * for violation of the customs laws; the disposition of * * merchandise * * * shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this chapter, insofar as applicable and not inconsistent with

1. Sec. 342. "Every clock, tape machine, slot machine or other machine or device for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost is hereby declared a gambling device and shall be subject to seizure, confiscation and destruction by any municipal or other local authority within whose jurisdiction the same may be found."

2. People v. One Device, 410 Ill. 318, 102 N.E.2d 122; Frost v. People, 193 Ill.

635, 61 N.E. 1054; Bobel v. People, 173 Ill. 19, 50 N.E. 322.

3. People v. One Device, supra.

4. Sec. 343. "Every owner, occupant, lessee, mortgagee or other person in possession of any premises upon which any gambling device may be located and every person in the use, operation, lease or other possession of the same shall be fined * * *."

5. People v. One Device, supra, 346 Ill.App. 562, 105 N.E.2d 769.

the provisions hereof: Provided, That such duties as are imposed upon the collector of customs * * * under the customs laws shall be performed * * by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General."

The instant suits have proceeded in accordance with 19 U.S.C.A. §§ 1602–1615, Customs Duties. Said Section 1615 provides in part as follows:

"In all suits or actions brought for the forfeiture of any * * * merchandise * * * where the property is claimed by any person, the burden of proof shall lie upon such claimant; * * * Provided, That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court, * * *."

In view of this section, the government must first show probable cause for the seizures, or prima facie proof of the allegations of the libels "to be judged of by the court" before the burden of proof shifts to the claimants.[6] Since it is admitted that the gambling devices are slot machines they come within the definition of gambling devices as set forth in Section 1 of the Johnson Act. The decision must then be made whether they were possessed, or used in violation of the Act. This requires proof that the claimants were dealers in gambling devices and thereby violated Section 3[7] when they possessed, or used the gambling devices without registering as dealers.

 Inasmuch as "dealer" is not defined in the statute the court should examine the purpose for which the statute was enacted. The Act is entitled "An Act to prohibit transportation of gambling devices in interstate and foreign commerce." Public Law 906, U.S.Code Cong.Ser., 1950, Vol. 1, page 1234. This is made even more explicit in the legislative history, U.S.Code Cong.Ser., 1950, Vol. 2, page 4240:

"The primary purpose * * * is to support the policy of those States which outlaw slot machines and similar gambling devices, by prohibiting use of the channels of interstate or foreign commerce for the shipment of such machines or devices into such States."

The Congress was evidently intending to prohibit the shipment of gambling devices as defined by Section 1 of the Act into states such as Illinois where slot machines are illegal. According to the stipulation, none of the seized devices were actually in interstate commerce or intended for interstate commerce but were being used and operated intrastate in the City of East St. Louis. The claimants do not come within the term "dealer in gambling devices" within the scope of the Act.

"Dealer" in the common usage does not include the claimants or anyone else possessing or using the machines in this case. It must be observed that the Johnson Act is a penal statute and provides for forfeiture. Forfeitures are not favored and they should be enforced only when within both the letter and spirit of the law. United States v. One 1936 Model Ford Coach, 307 U.S. 219, 226, 59 S.Ct. 861, 83 L.Ed. 1249. Forfeiture statutes should be strictly construed. C. C. Co. v. United States, 5 Cir., 147 F.2d 820; The Leme, 77 F.Supp. 773, 777. These devices were being used and operated, or in storage to be used and operated, all in the same way. The owners of the establishments where the machines were placed for operation certainly are not dealers in gambling devices. Newgent, who had machines in his place of business, is not a dealer. The claimants are not dealers in slot machines. They neither held themselves out as ready and willing to sell the machines to purchasers nor were they attempting to

6. United States v. Andrade, 9 Cir., 181 F.2d 42; The J. Duffy, D.C., 14 F.2d 426; United States v. One Oldsmobile Club Coupe, etc., D.C., 33 F.Supp. 848.

7. Sec. 3. "Upon first engaging in business, and thereafter on or before the 1st day of July of each year, every manufacturer of and dealer in gambling devices shall register with the Attorney General his name or trade name, the address of his principal place of business, and the addresses of his places of business in such district. * * *"

find purchasers. They purchased the machines as an investment and elected to operate them at a profit instead of selling them. Claimants were dealing in chance to obtain coins from the slot machines. It is not a different situation than where an individual distributes gum or peanut vending machines, dividing the income from the machines with the owners of the businesses where the vending machines are located. Such a person is clearly a dealer in gum or peanuts but not a dealer in vending machines. Two district courts have been presented with similar uses of slot machines and have held that those who operated machines under similar circumstances were not dealers, that a "dealer" is one who buys and sells in the ordinary course of trade and not one who merely operates machines. Smith v. McGrath, D.C.Md., 103 F.Supp. 286; U. S. v. 200 Gambling Devices, D.C. La., 103 F.Supp. 886. In In re Hemming, D.C., 51 F.2d 850, at page 852, the court in interpreting the meaning of the Mississippi bankruptcy statute stated:

"A dealer, in the popular, and therefore in the statutory, sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again."

The government maintains that inasmuch as claimant Reay made one sale he therefore qualified as a dealer and was required to register under the Johnson Act. In support of its position the government cites Nicoli v. Briggs, 10 Cir., 83 F.2d 375. In this case Nicoli filed a petition for a writ of habeas corpus against Briggs, the U. S. Immigration Inspector, who was attempting to deport him under 8 U.S.C.A. § 156(a), which reads:

"Any alien * * * who * * * shall be convicted for violation of [the narcotic laws] shall be taken into custody and deported * * *."

The court said, 83 F.2d at page 378:

"In interpreting words used in statutes, the entire statutory plan and the reasons therefor should be kept in mind. *One sale is a crime,* either of unstamped narcotics by any one or of stamped narcotics by those not authorized to sell them. There are no legitimate 'dealers' in unstamped drugs. In defining dealers in stamped drugs, the statute defines a dealer as 'Every person who sells, or offers for sale, any of said drugs.' 26 U.S.C.A. § 1391(c) and (d)." [8] (Emphasis supplied.)

Nicoli admitted he made one sale of unstamped drugs. The court held him to be a dealer and added:

"Congress could not well define a dealer in unstamped drugs, for none such was recognized; but Congress has enacted that one sale is a crime, and no reason is suggested why one unauthorized sale of a stamped drug should make the seller a dealer, and yet require *two sales of unstamped drugs* to accomplish the same purpose."

This is an entirely different situation from the instant case. The court in that case was construing a revenue measure taxing a single sale. On that basis one who made one sale of an unstamped drug, or if not registered sold one stamped drug, deprived the government of revenue and thus violated the statute. The court has already discussed the purpose of the Johnson Act. It is not a revenue measure and does not define a dealer as every person who sells or offers for sale a gambling device.

The government has failed to establish a prima facie case that the gambling devices were possessed or used by dealers. It has been stipulated that the devices are slot machines and as such come within the definition of gambling devices in Section 1 of the Johnson Act, but this court concludes that the machines were not subject to forfeiture or confiscation for the reason that they were not "possessed, or used" in violation of the provisions of the Act. The court, in view of the Illinois law, is not finding that the claimants are the owners of the slot machines involved herein. It is the duty of the Illinois authorities to seize and destroy the machines, but in this proceeding this court is not enforcing the Illinois law in regard to slot machines.

8. Now 26 U.S.C.A. § 3228(c) and (d).

It is not necessary to determine the constitutionality of the Johnson Act since the court has held that the government is not entitled to seize the machines. It is well settled that if a case can be disposed of on a nonconstitutional issue without ruling on the constitutional issue involved a ruling on the constitutional issue should be avoided. Morgan v. United States, D.C., 107 F. Supp. 501, 504, and cases therein cited.

The libel suits must be dismissed and the devices returned. 28 U.S.C.A. § 2465. Findings of fact and conclusions of law may be submitted in accordance with this opinion. However, the court feels that the stipulation and findings of fact and conclusions of law as hereinbefore stated are sufficient. An order will be submitted in accordance herewith.