**UNITED STATES**

v.

**7 SLOT MACHINES & GAMBLING DEVICES et al.**

Civ. A. No. 4329.

United States District Court
N. D. Georgia, Atlanta Division.

Dec. 20, 1952.

J. Ellis Mundy, U. S. Atty., Lamar N. Smith, Asst. U. S. Atty., for plaintiff.

Roland Neeson, Brookhaven, Ga., for defendants.

SLOAN, District Judge.

The United States files a libel of information against 7 slot machine gambling devices under Title 15 U.S.C.A. § 1171 et seq., contending:

That John Harold Moore, d/b/a Ace Novelty Company, was during the year 1951 and prior thereto a dealer in gambling devices and slot machines who had not at any time prior to November 7, 1951 registered with the Attorney General and who had not before the last day of each month filed inventories and records of all sales and deliveries of gambling devices with the Attorney General as required by the Act and that the gambling devices had been during the year 1951 unlawfully sold, delivered, and shipped by said dealer to the claimant herein and were repaired and reconditioned within the Northern District of Georgia by said dealer when he had not registered as required by law. That said machines were seized by the United States and are now in the custody of the United States Marshal for the Northern District of Georgia.

Asa Warren Candler Post No. 65, American Legion, Inc., files answer and denies that the Court has such possession of the gambling devices as would give it jurisdiction to entertain this forfeiture proceeding as they contend they were unlawfully seized without a search warrant and without libellee's consent and denies that John Harold Moore, d/b/a Ace Novelty Company, is such a dealer as is referred to in the Act and contends that the machines were the property of O. D. Jennings Company of Chicago, Ill., who was a registered manufacturer and/or dealer and that the machines involved were within the State of Georgia for many months prior to the enactment of the Act and never entered the channels of interstate commerce after the passage of the Act and denies that the machines had been repaired since the passage of the Act. That none of the machines have been transported in interstate commerce since the effective date of the Act and that they were used by libellee only for the purpose of operation and that the use of same had been discontinued at the time of seizure; that it is an innocent purchaser for value and that the seizure of same is in violation of libellee's rights under the Constitution of the United States.

Findings of Fact.

The gambling devices here in question were not shipped in interstate commerce after January 2, 1951, the effective date of the Act.

John Harold Moore, d/b/a Ace Novelty Company, was in the business of buying and selling gambling devices on September 13, 1951 at Atlanta, Georgia.

On September 13, 1951, John Harold Moore, d/b/a Ace Novelty Company, was not registered with the Attorney General of the United States as required by the Act, effective January 2, 1951.

That on September 13, 1951 John Harold Moore, d/b/a Ace Novelty Company, sold the gambling devices in question to the claimant, the present owner thereof.

That the claimant bought the machines in good faith, not knowing that John Harold Moore, d/b/a Ace Novelty Company, was not a registered dealer.

Ace Novelty Company of Atlanta, Georgia, is owned and operated by John Harold Moore.

Prior to January 2, 1951, John Harold Moore was the representative of a slot machine manufacturer in Atlanta, Georgia, and as Ace Novelty Company bought, sold and repaired slot machines and gambling devices.

Prior to January 2, 1951 Moore stocked up on repair parts for slot machines and on slot machines and on January 2, 1951 had on hand at Atlanta, Georgia, 110 slot machines, 60 of which were new, and a stock of repair parts for slot machines valued at $10,000. All of the new machines and repair parts were received by him from Chicago, Ill., the last shipment being received by him on December 15, 1950.

After January 2, 1951, Moore never repaired, received, bought, sold or used slot machines or slot machine parts outside of the State of Georgia.

On November 15, 1951, Moore registered with the Attorney General as a dealer in gambling devices.

The transactions here involved were purely intrastate transactions.

In the seizure of the gambling devices here involved the Special Agents of the Federal Bureau of Investigation were acting under probable cause in making the seizure.

### Conclusions of Law

■ The Act of January 2, 1951, Title 15 U.S.C.A. § 1171 et seq., prohibiting the transportation of gambling devices in interstate commerce, was passed pursuant to the constitutional power of Congress to regulate interstate commerce, and being penal in character, must be strictly construed.

■ It is an elementary rule of construction that an interpretation of an Act which would make it unconstitutional will not be adopted unless imperatively required by the wording of the Act or the context of the Act as a whole.

One of the questions to be determined here is whether the Act applies to purely intrastate transactions.

■ Congress plainly has the power to prohibit or regulate the interstate movement of gambling devices and it possesses every power needed to make that prohibition or regulation effective— the commerce power is not confined in its exercise to the regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make the regulation of them appropriate means to the attainment of a legitimate end, the effective execution of the granted power to regulate interstate commerce.

■ No form of state activity can constitutionally thwart the regulatory power granted by the commerce clause to the Congress. Hence, the reach of that power extends to those intrastate activities which in a substantial way interfere with or obstruct the exercise of the granted power.[1]

■■ It is neither shown nor contended that purely intrastate transactions in gambling devices in any way interfere with or obstruct the regulation of such devices in interstate commerce, and to extend the Act to purely intrastate transactions gives to the Act an effect beyond the constitutional power of Congress. The Act does not apply to intrastate transactions.[2]

1. U. S. v. Wrightwood Dairy Co., 315 U. S. 110, 119, 62 S.Ct. 523, 86 L.Ed. 726.

2. Smith v. McGrath, D.C., 103 F.Supp. 286; U. S. v. Prock, D.C., 105 F.Supp. 263; U. S. v. 178 Gambling Devices, D.C., 107 F.Supp. 394.

■ The term "dealer" as used in the Act will be defined by applying the usual and ordinary meaning, and the ordinary acceptation of the term as applied to an article or commodity means one who buys and sells that commodity in the usual course of trade. Hence, owners, users and operators of such devices are not "dealers" within the meaning of the Act.[3]

■ This proceeding being "In Rem" for the condemnation and forfeiture of the devices, it must appear that the devices were guilty of a violation of the Act.

■ Where the only transactions in which the devices are involved are purely intrastate transactions, and it being neither shown nor contended that the devices moved in interstate commerce since the passage of the Act, such devices are not subject to forfeiture.

Where the evidence shows that a dealer in gambling devices, doing only an intrastate business, has failed to register in accordance with the requirements of the Act, and has possessed, repaired, sold and used such gambling devices only within the State, the Act does not authorize the seizure and destruction of such devices, since to give the Act that construction would give to it the effect of regulating intrastate commerce, which under the facts in this case is beyond the constitutional power of Congress.[4]

Judgment.

In accordance with the foregoing findings and conclusions, it is

Considered, ordered and adjudged that upon the expiration of time for appeal and no appeal is filed, or after final judgment if affirmed on appeal, the United States Marshal is authorized and directed to deliver the described gambling devices to Asa Warren Candler Post No. 65, American Legion, Inc., of Brookhaven, DeKalb County, Georgia.

3. U. S. v. 200 Gambling Devices, D.C., 103 F.Supp. 886.

4. U. S. v. 178 Gambling Devices, supra.