Carl TOMPKINS, Appellant,

v.

UNITED STATES, Appellee.

No. 5203.

District of Columbia Court of Appeals.

Submitted Nov. 10, 1970.

Decided Dec. 29, 1970.

Edward DeV. Bunn, Washington, D. C., appointed by this court for appellant.

Thomas A. Flannery, U. S. Atty., with whom John A. Terry, Zollie Richburg, and John S. Ransom, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, FICKLING and REILLY, Associate Judges.

REILLY, Associate Judge:

This case is before us on appeal from a conviction of possession of implements of a crime, D.C.Code 1967, § 22–3601, narcotics paraphernalia, consisting of a hypodermic syringe, a needle, and a bottlecap "cooker". Appellant, having waived jury trial, moved for acquittal after the Government had rested. The trial judge denied this motion, found appellant guilty, and sentenced him to 180 days imprisonment.

In this court, appellant contends that the court below erred (1) in permitting—over counsel's objections—oral testimony by a special officer of certain remarks made to him by appellant at the time the latter was taken into custody, and (2) in receiving as exhibits the syringe, needle, and bottlecap.

Appellant also argues that the section of the Code i. e., Section 3601, upon which the conviction was based, is (a) unconstitutional for vagueness as it requires appellant to give a "satisfactory account" for possession of the implements in question; and (b) in any event unconstitutional in application, where such statute is construed as covering possession of items which are the result of a defendant's addiction to narcotics.

After examination of the record, including the transcript, we are of the opinion that none of these contentions is well grounded and, accordingly, affirm the conviction.

At the trial Robert D. Harris, a special officer employed by Children's Hospital as a security guard, testified that on December 5, 1969 he found appellant in a semi-conscious condition on the floor of the men's room there, and that while he and another security policeman were helping appellant to get up, they picked up a hypodermic·syringe on the floor beside him and a bottlecap cooker which fell from appellant's pocket.

According to the witness appellant, on being taken to the guard office, volunteered that he had had three pills with him which he put in the cooker and later flushed down the toilet.

When two officers from the metropolitan police force arrived at the hospital in response to a call, Harris said he turned over the syringe, needle, and cooker to them. These officers, James W. Pawlick and John A. Murincsak, testified to the effect that after Harris turned over these articles to them, appellant was arrested and taken to a police station, where Pawlick gave the items Harris had given him to Officer Bryan Gaines.

Qualified as an expert witness on the use of narcotics, Gaines told the court that a syringe, needle, and cooker produced at the trial in an envelope marked by the prosecutor as an exhibit for identification, were the articles delivered to him by Pawlick, and that such items are used for the administration of narcotics. Recalled to the stand, neither Harris nor Pawlick would testify that the syringe was the one Harris had picked up as there was no identification mark on it, but they did identify the green bottlecap cooker because of a black burnt mark.

Daniel Francois, a chemist employed by the Bureau of Narcotics, was shown the items contained in the exhibit. He testified that his chemical analysis of the syringe and the cooker disclosed traces of heroin in both.[1]

When the exhibit was offered, defense counsel objected on the grounds that the hospital officer was unable to say that the contents of the envelope were precisely the same items such witness picked up at Chil-

1. Francois' testimony about the person to whom he delivered the envelope containing these items was somewhat confused in that he first stated he gave it to Officer Gaines, then corrected himself, saying it was a United States marshal, and corrected himself again in response to a further question, to say that it was the prosecuting attorney.

dren's Hospital and that there were some missing links in the chain of custody. The court overruled the objection and the Government rested.

After an unsuccessful motion for acquittal, only one witness was called by the defense, *viz.*, Officer Gaines, who was questioned again on how he recognized the bottlecap cooker then in evidence. The witness still insisted it was the one Pawlick had given him.

One factor that shapes our opinion in reviewing appellant's exceptions to the two disputed evidentiary rulings is the limited character of the offense on which the conviction was based. The information filed against appellant did not charge him with possession of narcotics—a separate offense under another section of the D.C.Code 1967, § 33–402, but solely with a violation of Section 3601 which provides:

> No person shall have in his possession in the District any instrument, tool, or other implement for picking locks or pockets, or that is usually employed, or reasonably may be employed in the commission of any crime, if he is unable satisfactorily to account for the possession of the implement.

Appellant's first assignment of error was the court's permitting, over objection of counsel, Officer Harris to testify as to what appellant said. The particular testimony which is the subject of this objection is:

> THE WITNESS: He stated, why couldn't I let him loose. And I said I wasn't going to. And he said he had three pills, he had had the three pills and put them in the cooker; and we asked him where were the pills, and he said he had flushed them down the toilet in the bathroom, and that was it. And he asked me was I coming to court, and I said, yeah, I would be in court. And he said he would see me in court, and that was it. (Tr.18)

Appellant argues that this testimony should have been excluded, the statement having been made at a time when the arresting officer had failed to make him aware of his right to have an attorney present. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Government brief points out that Harris did tell appellant "he did not have to say anything * * * because what he said could be used against him in court" and also argues that because Harris was a hospital guard, he was not a law enforcement officer within the meaning of *Miranda*.

■ In our view, it is not necessary to resolve this question. As we have noted, appellant was not charged with or convicted of possession of narcotics. His reference to possessing pills which he had put in the cooker, was a matter extraneous to the issue. But even more importantly, this statement was not made in response to any interrogation, but as the transcript reveals, was volunteered in the context of a request by appellant to be released. As the *Miranda* doctrine is concerned solely with the rights of a person subjected to interrogation while in custody, it has no bearing here. Fuller v. United States, 132 U.S.App.D.C. 264, 278, 407 F.2d 1199, 1213 (1968).

■ For similar reasons, we find no error in the admission of the disputed syringe.[2] Appellant, citing two cases from this circuit, Novak v. District of Columbia, 82 U.S.App.D.C. 95, 160 F.2d 588 (1947); Smith v. United States, 81 U.S. App.D.C. 296, 157 F.2d 705 (1946); and also United States v. Panczko, 353 F.2d 676 (7th Cir. 1965), cert. denied, 383 U.S. 935, 86 S.Ct. 1066, 15 L.Ed.2d 853, contends that objects taken from a defendant in a criminal case cannot be received into evidence unless their identification in the courtroom is clear and unequivocal.

---

2. All officers identified as the original, the cooker in which the chemist found traces of heroin.

In the first of these cases—a prosecution for drunken driving—a urine sample containing alcohol was held improperly admitted for failure of the officer having the defendant in custody to prove it came from the bottle containing the original specimen; in *Smith,* the witness was not sure that a purse he was called upon to identify, came from defendant's pocket; and in *Panczko,* testimony that U.S. post-office keys identified as looking "similar" to those defendant had discarded was deemed incompetent. These decisions are readily distinguishable, for in each of these cases which turned on circumstantial evidence, the precise identification of the exhibits by the witness who took the objects from defendant was crucial to the ultimate issue.

But here the uncertainty of the arresting officers as to whether the syringe produced at the trial—which the chemist stated contained traces of heroin—was the same one they had seen at the hospital, did not render the exhibit inadmissible. Obviously most hypodermic instruments—unless an identifying mark has been placed on them—look very much alike. But there is other evidence in the case to prove the authenticity of the disputed exhibit, *viz.,* an envelope in which Officer Pawlick placed the articles given him by Harris at the hospital, which he in turn gave to Gaines, the narcotics officer, who transmitted it to the laboratory. On the stand, Gaines identified his signature and Pawlick's on this envelope contained in a larger one which the chemist, Francois, had brought to the courtroom, and testified to its having been sealed before it left his possession.

The chemist testified that he obtained from his supervisor a locked, sealed envelope from which he took the items to be analyzed and returned them with his initials to the smaller envelope, placed it in a larger envelope which he locked, sealed, signed, and brought to court. Hence, contrary to appellant's argument, no "missing link in the chain of custody" has been demonstrated.

It is true that the supervisory chemist who assigned the envelope to Francois was not asked to testify, but there is no suggestion that he opened either of the sealed envelopes. To be sure, there was some momentary confusion on the part of both Harris and Francois as to whom they delivered the disputed items of evidence, but this was satisfactorily explained and clarified before the prosecution rested.[3]

In arguing that Section 22–3601 is unconstitutional for vagueness because it places upon defendant the burden of giving "a satisfactory account" for possession of the implements, appellant recognizes that this court in a decision handed down on March 24 of this year, rejected this very argument, McKoy v. United States, D.C. App., 263 A.2d 645 (1970). Appellant urges reconsideration of this holding on the ground that it cannot be reconciled with Ricks v. District of Columbia, 134 U.S.App.D.C. 201, 414 F.2d 1097 (1968), declaring unconstitutional a statute defining vagrancy as consisting, *inter alia,* of "not giving a good account of himself * * * when found loitering in any park, highway, public building. * * *"

We do not accept the view that *McKoy* is in conflict with *Ricks.* Plainly a seemingly innocuous act like "loitering" is quite different from the possession of the implements of a crime or the possession of narcotics where statutes state the availability of a specified defense to rebut such

---

3. *Of course, if one of the elements of the offense for which defendant was convicted was possession of narcotics, convincing proof that some visible quantity of heroin was included in the articles taken from appellant's person would have been required. But, as we have emphasized, this* conviction is based solely on the possession of narcotic implements. Harris' testimony that such instruments were found on appellant is undisputed, as is the testimony of Gaines that the syringe and cooker were adapted to narcotic administration.

inference of criminal behavior as would reasonably be drawn from possession.

While the *McKoy* opinion is a short one, this distinction was explained at some length in United States v. McClough, D.C. App., 263 A.2d 48 (1970), a decision handed down by this court earlier in the year on an associated issue of constitutionality directed at D.C.Code 1967, § 22–1515(a), which provides in pertinent part—

> Whoever is found in * * * an establishment where * * * any narcotic drug is sold, administered, or dispensed * * * if he is unable to give a good account of his presence in the establishment * * *.

Therefore, we see no reason for reconsidering *McKoy*. It is firmly grounded on other decisions of this court and is entirely consistent with holdings of the Supreme Court of the United States on a cognate federal statute. [4]

Appellant's remaining contention is that wholly apart from these other considerations, the conviction must be reversed because Section 22–3601 is unconstitutional in that it can have no application to items, the possession of which are the result of an addict's need to use narcotics. A recent decision of the United States Court of Appeals for this circuit is cited in support of the proposition that statutes forbidding the possession of narcotics—and presumably narcotic instruments—cannot be applied to persons addicted to narcotics without offending the eighth amendment. Watson v. United States, U.S.App.D.C., (No. 21186, decided July 15, 1970) (en banc).

This decision did not turn on that issue, and we do not read the indicated views of the majority as going so far.

■ The record here, however, is such that we do not reach the constitutional question. Appellant did raise the matter of narcotic addiction as a defense both in a preliminary motion session and at the trial, but he introduced no evidence to show that appellant was addicted to heroin at the time of his arrest. It is well settled that where a criminal statute is of general application, the burden of showing that he falls within an excepted class is on the defendant. *See, e.g.,* Nicoli v. Briggs, 83 F. 2d 375, and cases cited at 379, (10th Cir. 1936).

It is true that after defense counsel in his opening statement had alluded to Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), the court expressed the view that the "California" holding was not applicable to the statute under which appellant was being tried. This may have discouraged counsel from going forward, but at least he was free to have made an offer of proof to show that appellant was in fact a heroin addict. The record suggests, however, that such testimony was not available to appellant, for he had previously informed the motions judge in an application for pre-trial release on December 9 and 16, 1969, that "defendant is not now physically addicted to narcotics." [5]

In the absence of affirmative evidence to the contrary, there is no basis for assailing this conviction on constitutional grounds.

Affirmed.

4. Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925).

5. The opinion rejecting this application shows it was not denied on any question of addiction, but because of prior convictions and the inability of the D. C. Bail Agency to recommend release on personal recognizance.