**Charles H. FORD, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12832.**

District of Columbia Court of Appeals.

Argued Nov. 7, 1978.

Decided Dec. 11, 1978.

Karen D. Hurvitz, with whom William W. Greenhalgh, Washington, D. C., was on the brief (both appointed by the court), for appellant.

John Voorhees, Dept. of Justice, with whom Earl J. Silbert, U. S. Atty., and John A. Terry and Mary Ellen Abrecht, Asst. U. S. Attys., and William C. Brown, Dept. of Justice, Washington, D. C., were on the brief, for appellee.

Before KELLY, NEBEKER and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was convicted by a jury of unlawful possession of heroin. D.C.Code 1973, § 33–402(a). He urges reversal on the grounds that (1) the trial court erred in not replacing the jury panel after the clerk improperly called appellant's case, (2) the trial court erred in allowing the arresting officer to testify that he was executing an arrest warrant for appellant when appellant was found with the narcotics, and (3) the government failed to demonstrate a proper chain of custody for the narcotics evidence introduced against him.[1] We affirm.

I

■ At the commencement of appellant's trial, while the jury panel was in the courtroom but prior to the voir dire, the clerk called "the case of the United States versus Charles H. Ford, Criminal Case No. 91850–76 and 92012–76." Immediately upon hearing the announcement of two case numbers, the trial judge called counsel to the bench to discuss the situation. The prosecutor indicated that although there were two cases pending against appellant, only one, the narcotics offense, was to be tried that day. Appellant's counsel rejoined that the announcement of two case numbers indicated to the jurors that appellant was faced with another charge and that this knowledge would adversely influence their decision. Accordingly, defense counsel requested a new jury panel.

The trial judge declined the request, noting that the clerk's announcement was merely a mistake and that he would so instruct the jury. He then stated:

THE COURT: Ladies and gentlemen of the jury panel, by way of preface, I want to say the reason I called counsel up was by inadvertence or accident two cases were read. There is only one case here involving this defendant, so don't be under the impression that there are two cases involving this defendant. There is only one case that is here for trial and

that involves the charge by the grand jury that on or about April 26th, 1976, within the District of Columbia, Charles H. Ford, the defendant here, did possess and have under his control a quantity of heroin.

Appellant contends that this instruction was insufficient to dispel the alleged prejudice. We disagree. Initially, we doubt that the clerk's announcement of the defendant's "case" followed by a recitation of two numbers would convey anything to a jury panel other than the fact that trial was about to commence. Such a pro forma action is hardly equivalent to telling the jury that a defendant has an arrest record, as appellant contends. We conclude that even if any modest uncertainty was created by the announcement, it was promptly remedied by the trial judge's instruction.

II

■ Appellant argues that the arresting officer's testimony impermissibly prejudiced the defendant in the eyes of the jury. The officer was called to explain how it happened that appellant was apprehended with narcotics on his person. In so doing, the officer stated that he had been informed that appellant, "who had an outstanding arrest warrant" against him, was at a certain location and that he and two other officers had proceeded there to execute the warrant. Appellant asserts that the officer's reference to the arrest warrant was both unnecessary and prejudicial because it improperly brought to light his arrest record. We are unpersuaded by this contention.

The officer never mentioned the origin of the arrest warrant. He merely referred to its existence in the context of explaining the circumstances surrounding appellant's apprehension. On numerous occasions we have stated that evidence of other crimes may be admitted to explain the circumstances of the offense charged. See, e. g., Chambers v. United States, D.C.App., 383

---

1. In his brief, appellant also contended that the trial judge had made an improper comment on the evidence. That point was withdrawn at oral argument.

A.2d 343, 345 (1978); *Lewis v. United States*, D.C.App., 379 A.2d 1168, 1171 (1977); *Day v. United States*, D.C.App., 360 A.2d 483, 485 (1976); *Wooten v. United States*, D.C.App., 285 A.2d 308, 309 (1971). Here, the testimony never even rose to the level of "other crimes" evidence. Rather, it was simply part of a permissible explication of the events which led up to appellant's arrest, and the court did not err in admitting it.

### III

The final contention of appellant focuses upon the physical evidence which was introduced against him. When the arresting officers confronted appellant on a stairway landing, appellant removed a change purse from his pocket and threw it out a window. The purse was recovered; in it were several tinfoil packets which contained white powder. A field test of the powder indicated that it contained narcotics.

After the field test, the purse and its contents were put into a lock-seal envelope by one of the arresting officers and sent to the Drug Enforcement Agency (DEA) on April 26, 1976 (the day of appellant's arrest), for analysis. There it was received by a chemist, identified in this record only by the initials "M.S.", on April 27, 1976. M.S. opened the envelope, analyzed the contents, found heroin, and placed the material in a second lock-seal envelope. On February 3, 1977, this second envelope was opened by another chemist, E. L. Farmer, who also analyzed the contents and then put them in a third lock-seal envelope which was kept in a vault until the time of trial.

At trial, Mr. Farmer testified to that sequence of events. He stated that he had found the powder to contain 4.1 percent heroin, and that his qualitative finding differed from that previously made by M.S.[2] Farmer also testified about the customary security procedures for drug samples at the DEA.

The government also called Detective H. R. Norris as an expert on narcotics and on the procedures followed in handling narcotics evidence. Norris testified that judging from the notations on the first lock-seal envelope, it appeared to have been handled in accordance with standard procedures. On the basis of the testimony of both witnesses, the evidence was admitted over appellant's objection.

▪ There are several settled principles which apply to the admission of physical evidence. Foremost is the consideration that the trial judge is invested with broad discretion in determining its admissibility. *See, e. g., United States v. McDowell*, 539 F.2d 435, 437 (5th Cir. 1976); *United States v. Godoy*, 528 F.2d 281, 283 (9th Cir. 1975); *West v. United States*, 359 F.2d 50, 55 (8th Cir. 1966); *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960). The trial judge must be satisfied that "in reasonable probability the article has not been changed in important aspects." *United States v. S. B. Penick & Co.*, 136 F.2d 413, 415 (2d Cir. 1943). *Accord, United States v. Brown*, 482 F.2d 1226, 1228 (8th Cir. 1973); *Gass v. United States*, 135 U.S.App.D.C. 11, 14, 416 F.2d 767, 770 (1969). This determination is made in light of the "nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it." *United States v. S. B. Penick & Co., supra,* at 415. Finally, when the item has been in the possession of government officials charged with its keeping, the court may assume, absent evidence of tampering, that the officials properly discharged their duties. *See, e. g., Gallego v. United States, supra,* at 917.

▪ Appellant acknowledges the validity of these principles. Nevertheless, pointing to the discrepancy between Farmer's findings and those of M.S. as to the percentage of heroin contained in the powder, he con-

---

**2.** M.S. was not called to testify, having been transferred in the meantime to Texas. Her notes revealed, however, that she found heroin present in a lesser amount than did Farmer.

Farmer characterized the difference in findings as "quite a bit," but the details of the difference were not explored on the record by counsel.

tends that there was a sufficient change in the evidence to remove any presumption of regularity and to have required the testimony of M.S. This argument is not persuasive.

The government witnesses testified, and appellant concedes, that the lock-seals on the envelopes had not been disturbed. The envelopes were handled in a regular manner which fully comported with police and DEA practices. There was no evidence of tampering sufficient to rebut the government's showing of regularity. *See United States v. Santiago,* 534 F.2d 768, 770 (7th Cir. 1976). Appellant's assertion regarding the differing test results does not alter this conclusion.

Both chemists found that there was heroin present in the powder. Farmer testified that it contained 4.1 percent heroin, and quantitatively there was an amount which Detective Norris testified to be usable. *See Edelin v. United States,* D.C.App., 227 A.2d 395 (1967). Farmer did testify that his qualitative analysis was different from that of M.S. That fact alone, however, does not compel a finding that the evidence had been "changed in important respects." *United States v. S. B. Penick & Co., supra,* at 415. It simply constitutes evidence that two chemists reached differing results. This variance went to the weight of the evidence, not to its admissibility. Although it is true that the difference might permit an inference of change, that inference remained in the realm of speculation. Defense counsel did not pursue a course of questioning which might have supported a reasonable likelihood that the evidence had been contaminated, adulterated, or in any way affected. That fact, coupled with the normal presumption of regularity, entitled the trial judge permissibly to exercise his discretion in favor of admitting the evidence. *United States v. Daughtry,* 502 F.2d 1019, 1021 (5th Cir. 1974).

*Affirmed.*