STATE OF NEBRASKA, APPELLEE, V. KENNETH KABA,
APPELLANT.
349 N.W.2d 627

Filed April 20, 1984.  Nos. 83-665, 83-666.

Forrest F. Peetz of Peetz and Peetz, for appellant.

Paul L. Douglas, Attorney General, and G. Roderic
Anderson, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS,
CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

These are appeals from convictions and sentences
in the district court for Holt County, Nebraska.  In
each case the defendant-appellant, Kenneth Kaba,
was charged with issuing a check knowing he did not

have sufficient funds and/or credit with the drawee bank for payment of the check, in violation of Neb. Rev. Stat. § 28-611(1) (Reissue 1979). The cases were consolidated for trial and for purposes of appeal in this court. The district court, sitting without a jury, found the defendant guilty of both charges, and the defendant was sentenced to concurrent terms of imprisonment in the Nebraska Penal and Correctional Complex for not more than 7 nor less than 3 years. We affirm.

These cases were previously before this court in *State v. Kaba*, 210 Neb. 503, 315 N.W.2d 456 (1982), at which time we determined the appeals were premature as no final sentences had been imposed, and in *Kaba v. Fox*, 213 Neb. 656, 330 N.W.2d 749 (1983), wherein Kaba brought a habeas corpus action against the sheriff to whom the district court had remanded him for the purpose of carrying out the court's previous commitment order. In the latter opinion we held that Neb. Rev. Stat. § 83-1,105(3) (Reissue 1981) (commitment for evaluation purposes) was constitutional and that the delay in sentencing the defendant did not deny him his right to a speedy trial as provided by the sixth amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution. In the instant case we deal with the propriety of the defendant's convictions and sentences.

The facts are simple. On February 12, 1980, Kenneth Kaba contacted Dean Rowse, a farmer and rancher in Holt County, Nebraska, concerning the sale of cattle which Dean Rowse had advertised. After additional discussions concerning the transaction, the first load of cattle was shipped out February 20, 1980, and the second load, February 21, 1980. On that day, after the cattle had been loaded, Kaba issued and personally handed two checks, one in the amount of $41,400 and the other in the amount of $17,280, to Dean Rowse. Both checks were subsequently returned marked "insufficient funds," and

the Holt County attorney initiated these proceedings. After waiving a trial by jury Kaba was found guilty on both charges and was sentenced to 3 to 7 years in the Nebraska Penal and Correctional Complex on each count, said sentences to run concurrently.

Kaba appeals, basically assigning three errors: (1) There is insufficient evidence to support a finding of defendant's guilt beyond a reasonable doubt; (2) The district court erred and abused its discretion in denying defendant's motions to withdraw his waiver of a jury trial; and (3) The sentences imposed are excessive.

Concerning the first assignment of error, Kaba contends that the identity of the accused as the person who committed the crimes was not established by the State beyond a reasonable doubt. More specifically, he asserts that because none of the State's witnesses identified Kaba by actually pointing him out in the courtroom, his convictions must be reversed and the charges dismissed. We agree with the defendant that the State must establish beyond a reasonable doubt the identity of the accused at trial. When the State fails in meeting its responsibility, jeopardy attaches and acquittal is the proper remedy. *Burks v. United States*, 437 U.S. 1, 98-S. Ct. 2141, 57 L. Ed. 2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S. Ct. 2151, 57 L. Ed. 2d 15 (1978). We also agree that, unfortunately, the county attorney failed to ask any State's witness two basic questions: (1) Is the defendant, Kenneth Kaba, in the courtroom today? (2) Would you point out the defendant, Kenneth Kaba? Contrary to the defendant's position, however, under the facts of this case the omission of an in-court identification does not require acquittal.

In many cases identification of the defendant is not litigated, and so remains as only an implicit issue. In other instances identification is a very real and hotly contested issue, as, for example, where the opportunity of the witnesses to observe the perpetrator at the time of the commission of the crime

or their ability to recall accurately at trial is the subject of substantial exploration. This case is clearly of the former type and not of the latter; it is not a case of possible misidentification, of suggestive pretrial procedures, or of uncertain, equivocal, or indecisive in-court identification. Rather, the defendant has interposed a highly technical and narrow objection concerning the sufficiency of the State's proof.

The parties, disregarding their assertions promoting their respective positions, are of little assistance in resolving this question, and although this court has never passed on the exact issue, other jurisdictions have. In *State v. Hutchinson*, 99 N.M. 616, 623, 661 P.2d 1315, 1322 (1983), the court stated:

Hutchinson asserts that at no time during the trial did Hart or High, the only eye witnesses to the crime, identify Hutchinson as he sat in the courtroom, as the person responsible for the crimes charged. Nor did any other witness identify Hutchinson as the same individual whom Hart and High had testified about. Nor was there other evidence admitted, such as fingerprints, blood stains, hair samples, or articles belonging to Platt that would link Hutchinson to the crimes charged, other than Hart's and High's testimony.

After the State's case in chief, Hutchinson asked for a directed verdict for failure of the witnesses to identify Hutchinson as the defendant in this case. The trial court denied the motion stating that there was "sufficient evidence to establish a prima facie case, evidence from which reasonable inference could be drawn as to the elements of the crime charged."

In the present case, during Hart's and High's testimony, Hutchinson was referred to as "the Defendant, Terry Wayne Hutchinson", "Terry Hutchinson", "Terry", "The Defendant" or "Wolf" (Hutchinson's nickname).

The New Mexico Supreme Court went on to rule that there were sufficient inferences identifying Hutchinson to permit the jury to draw the inference that the person on trial was the one who committed the crimes.

The Oklahoma Court of Criminal Appeals has passed on this issue in at least three cases. See, *Workman v. State*, 491 P.2d 308 (Okla. Crim. App. 1971); *Holt v. State*, 489 P.2d 504 (Okla. Crim. App. 1971); *Dillon v. State*, 508 P.2d 652 (Okla. Crim. App. 1973). These cases stand for the general proposition that although it is better practice for a prosecuting attorney to specifically ask a witness to make an in-court identification of a defendant, there is no failure of identification when references were made by the witnesses throughout the trial implying that the person to whom the witnesses were referring was the same person who was on trial and present in the courtroom.

In *State v. Hill*, 83 Wash. 2d 558, 560, 520 P.2d 618, 619 (1974), the court stated:

In the case at bench, the defendant was present in the courtroom at all pertinent times throughout the course of the trial, during which there were numerous references in the testimony to "the defendant" and to "Jimmy Hill." The arresting officer testified that it was "the defendant" whom he observed at the scene of the arrest, that he had ordered "the defendant" to halt, and that it was "the location where the defendant was finally stopped that the Kleenex was found." The jury verdict was in the form: "We, the Jury . . . , find the defendant [Jimmy Hill] GUILTY . . ."

Although we do not recommend the omission of specific in-court identification where feasible, we are satisfied that the evidence as it developed in the instant case was adequate to establish the defendant's identity in connection with the offense for which he stood accused.

Perhaps the best-reasoned cases concerning the issue are *United States v. Fenster*, 449 F. Supp. 435 (E.D. Mich. 1978), and *United States v. Weed*, 689 F.2d 752 (7th Cir. 1982). In *Fenster, supra*, the prosecutor failed to have any of the government witnesses make an in-court identification of the accused. The court held that the failure of any of the witnesses to point out that the wrong man had been brought to trial was eloquent and sufficient proof of identity. To maintain absolute certainty, the district court permitted the government to reopen its case.

In *United States v. Weed, supra*, the court stated at 755-56:

> In this case, three Customs agents testified regarding the events of the evening of December 22, 1977 and the statements made by Weed. None of these witnesses during the bench trial noted that the defendant was not the same John Weed stopped in 1977. Both the prosecution and defense counsel referred to the defendant at trial as the John Weed involved in the December, 1977 events. At no time did defense counsel object to the prosecution's references to "the defendant." Appellate counsel, who was also defense counsel, admitted at oral argument to this Court that he realized no identification had been made during the testimony of the third witness, yet he still did not object to references to the defendant.

The court went on to hold that there was sufficient evidence for the trial court to find the defendant guilty beyond a reasonable doubt.

We find the above authorities persuasive, and by applying that rationale to the evidence before us in the instant case, we find, beyond a reasonable doubt, that the Kenneth Kaba who appeared in the courtroom during the trial was the Kenneth Kaba whose behavior was reported by the witnesses. The record

is replete with evidence sufficient to furnish the link. A few examples are as follows:

Q. [By Mr. Strope] And did Mr. Kaba pay you for the checks (sic) at that time? Pay you for the cattle, excuse me, at that time? A. [By Dean Rowse] Yes, he gave me two checks; one check for $41,400 and one for $17,280. . . . Q. And are those the original checks that you received from Mr. Kaba? A. Yes, I'm sure they are. . . . Q. And would you indicate to the Court what portions on that check you saw filled in and who filled them in? A. Ken, he completed the check with my name and the amount, what it was for, and signed his name. . . . Q. What did you state to the operator in placing that call? What information did you give to the operator? A. I asked to talk personally with Ken Kaba at Hoxie, Kansas, and I gave her his number. Q. And did the operator then place that call? A. Yes.

The following colloquy took place on cross-examination of the State's principal witness, Dean Rowse:

Q. [By Mr. Peetz] Okay. So on your testimony, this 4th day of March you called Mr. Kaba to tell him that his check had not cleared the bank, is that correct? A. Yes. Q. And it is true that he asked you for some time to get the money in the bank to clear it, and you told him that would be all right? A. I said two or three days. . . . Q. Now, Mr. Rowse, are you aware that on the 5th day of March, the day after that phone call, that a criminal complaint was filed against Mr. Kaba? A. I didn't remember the date, no, but it was filed. Q. Well, would it be fair to say that prior to the time that you were telling Mr. Kaba on the telephone that he can have additional time to cover this check, that you had already gone to the authorities and asked them to press charges? A. I don't know

the exact date when I called. It was about the 4th of March.

The defendant admits that he was present in court at all stages of the proceedings. The State's primary witness, Dean Rowse, testified in detail concerning the transaction by which Kenneth Kaba purchased and took delivery of the cattle, how Kenneth Kaba sat in Mr. Rowse's kitchen on February 21, 1980, and drafted and signed the two checks, and how he contacted the defendant in Hoxie, Kansas, after the checks had been returned. Apparent from the defendant's cross-examination of Dean Rowse is the fact that Dean Rowse was intensely aware of the criminal proceedings against the defendant, Kenneth Kaba. At no time did Dean Rowse give the slightest indication that the defendant, who was sitting at the defendant's table, was not the Kenneth Kaba who had issued him the bad checks. It is inconceivable that Dean Rowse would sit silently by, knowing the wrong man had been brought to trial. Dean Rowse's silence is eloquent and sufficient to support a finding of identity in this case.

The defendant next contends that the district court erred and abused its discretion in overruling his motion to withdraw the waiver of a trial by jury. We are not persuaded that such is the case. Once a trial by jury is voluntarily waived, which the defendant concedes, the defendant has no absolute right to withdraw or revoke his waiver and demand a jury trial. Whether one accused of a crime who has previously waived his right to trial by jury will be permitted to withdraw the waiver is within the discretion of the trial court. There is no error absent a clear abuse of discretion. *Sutton v. State*, 163 Neb. 524, 80 N.W.2d 475 (1957).

The defendant did not file his motion until May 15, 1981, the date set for trial. In light of the present availability of the State's chief witness, who would be subsequently unavailable because of heart surgery the next week, the court denied the motion and

ordered that the testimony of Dean Rowse be taken that day. The court, after the testimony was taken, allowed a continuance and set further proceedings for May 28, 1981, at which time the trial was concluded and the defendant ultimately found guilty. In view of the facts and circumstances known to the court when the motion was denied, it cannot be said that the court abused its discretion in not allowing the defendant to withdraw his waiver of a trial by jury.

In the defendant's final assignment of error, he asserts that, although the sentences imposed are within the statutory limits, under the facts and circumstances his sentences are excessive.

The defendant was twice convicted of violating § 28-611(1)(a). The maximum penalty on each charge, a Class III felony, is 20 years' imprisonment, or a $25,000 fine, or both, with a minimum of 1 year's imprisonment. Kaba was sentenced to a term of from 3 to 7 years on each charge, said sentences to run concurrently. The district court was cognizant of all the facts and circumstances surrounding the crimes, including the defendant's medical condition, past criminal history, and the investigation and evaluation by the Nebraska Department of Correctional Services. Considering the substantial sum of money involved in the crimes and the fact that the defendant's sentences are at the low end of the scale, it cannot be said that the district court abused its discretion in sentencing the defendant.

Finding no errors which merit reversal, the convictions and sentences of Kenneth Kaba are affirmed.

AFFIRMED.