**Reginald T. TURNEY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CF–1381.**

District of Columbia Court of Appeals.

Argued April 14, 1993.
Decided June 3, 1993.

---

9. The majority in *Bracey* did not reach or discuss the issue addressed in the cited portion of

the dissenting opinion.

Andrew J.J. Delehanty, Washington, DC, appointed by this court, for appellant.

Douglas F. Gansler, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, STEADMAN, Associate Judge, and GALLAGHER, Senior Judge.

ROGERS, Chief Judge:

■ Appellant Reginald T. Turney appeals his conviction by a jury of possession of cocaine, D.C.Code § 33–541(d) (Repl.1988), on the ground that the trial judge erred in denying his motion for judgment of acquittal because the government failed to prove beyond a reasonable doubt that the drugs admitted in evidence at trial were the same drugs recovered from appellant. The crux of appellant's contention is that, because the prosecutor only asked each of the police officers who handled the drugs whether the exhibit was "the same or similar to" the drugs recovered by the police from appellant on December 31, 1990, the evidence was insufficient to sustain his conviction for possession of cocaine on that date. We affirm.

The government maintains that appellant is barred from raising a sufficiency of the evidence claim on appeal because he failed to renew his motion for a judgment of acquittal at the close of all the evidence. According to the government, however, this court's decisions on this procedural point are not in harmony. *Compare Noaks v. United States*, 486 A.2d 1177, 1178–79 (D.C.1985) *with Washington v. United States*, 475 A.2d 1127, 1128–29 (D.C.1984). *See also Jackson v. Virginia*, 443 U.S. 307, 314–15, 99 S.Ct. 2781, 2786–87, 61 L.Ed.2d 560 (1979) (citing *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). Assuming, without deciding, that the government's characterization of our decisions is correct, any conflict need not be resolved here because even if appellant had renewed his motion, his claim would still fail.

■ Because drugs are fungible, the government was required to prove that the material seized from appellant by the police and thought to be illegal drugs was the same material analyzed by the chemist and found to be cocaine. *See generally* THOMAS A. MAUET, FUNDAMENTALS OF TRIAL TECHNIQUES 186–87 (1980) ("Where an object cannot be uniquely identified through the senses, a chain of custody must be established to demonstrate that it is the same object that was previously found"). Typically, this is accomplished by having a police officer identify his or her initials on the envelope into which he or she has placed the material obtained from the seizing officer or other officer on the scene. *See, e.g., Tompkins v. United States*, 272 A.2d 100, 103 (D.C.1970) (envelope containing syringe with heroin traces identified through testimony by expert witness that his signature and signature of officer who received item from another officer who found item at

scene were on the envelope; envelope was inside of heat-sealed envelope); *United States v. Santiago*, 534 F.2d 768, 769–70 (7th Cir.1976) (chain sufficiently established where agent testified that he affixed seal with his name on it to envelope containing drugs and placed the envelope in safe).

In the instant case, however, the prosecutor did not follow this procedure. Although it was clear that there was a signature on the heat-sealed envelope, the prosecutor did not ask Officer Hassen, who performed a field test on the drugs, whether his initials or signature appeared on the heat-sealed envelope into which he testified he placed the drugs. Instead, the prosecutor asked Officer Hassen (and every other officer who handled the drugs) whether or not the drugs in the envelope were "the same or similar" to the drugs he had received from Officer Norris, who in turn, had received them from Officer Rivera, who found the drugs in appellant's clothing.

Nevertheless, the government maintains that it met its burden to prove the chain of custody by having the three officers who handled the drugs each testify as to whom he received them from and passed them to, accounting for the drugs up until the time they were placed in the heat-sealed envelope and secured for analysis by the chemist. Thus, Officer Rivera testified that he handed the drugs to Officer Norris, who testified that he radioed a request for a field test. Officer Hassen testified that he responded to this call and received the drugs from Officer Norris. After testing the drugs, Hassen took them to the police station where he prepared the evidence envelope, filled out the necessary paperwork, and placed the drugs in a heat-sealed envelope.[1] During direct examination, the prosecutor held up a clear plastic bag containing a white rock substance and asked each of the officers if it looked "the same or similar" to the bag that Officer Rivera recovered from appellant. Each officer replied that it did.

Although better practice would suggest that at trial the government use the signature-initial identification procedure that the police routinely follow, as in *Tompkins, supra,* 272 A.2d at 103, we agree that the government presented sufficient evidence to establish the chain of custody of the drugs. Each officer who handled the drugs recovered from appellant testified about his handling of them. No link in the chain was missing. *See Ford v. United States,* 396 A.2d 191, 194–95 (D.C.1978) (when physical evidence is in control of government, presumption arises that it has been handled properly); *Rosser v. United States,* 313 A.2d 876, 880 (D.C. 1974) (once the government has established an "unbroken chain of custody as a matter of reasonable probability," defendant must present evidence of tampering); *Gass v. United States,* 135 U.S.App.D.C. 11, 14, 416 F.2d 767, 770 (1969) (applying reasonable probability standard); *Santiago, supra,* 534 F.2d at 770. Consequently, it was up to appellant to rebut the presumption, established at the close of the government's case in chief, that the government had established an unbroken chain of custody by showing that the drugs had been tampered with or that the drugs allegedly seized from appellant were indistinguishable from other exhibits of illegal drugs handled by the officers on the same day and that, hence, there was a defect in a link in the chain. *See Ford, supra,* 396 A.2d at 194–95; *Rosser, supra,* 313 A.2d at 880. Appellant did not do this. Indeed, the only testimony on whether the drugs had been tampered with was the government's expert's testimony that the drugs had been handled in accordance with the chain of custody procedures of the Metropolitan Police Department.

Cases in which courts have found the chain of custody to have been insufficiently proved—*see, e.g., Burleson v. United States,* 306 A.2d 659, 669 (D.C.1973) (evidence improperly admitted where complainant testified he was "reasonably sure" gun

---

1. Appellant makes no challenge to the custody of the drugs after they were placed inside of the heat-sealed envelope.

in evidence was the same one used by the defendant but could point to no identifying marks); *United States v. Panczko,* 353 F.2d 676, 679 (7th Cir.1965) (chain of custody insufficient where officer testified keys produced at trial were "similar" to keys he recovered at scene of crime), *cert. denied,* 383 U.S. 935, 86 S.Ct. 1066, 15 L.Ed.2d 853 (1966)—are readily distinguishable. In those cases the challenged evidence was unaccounted for at different time periods, thereby breaking a link in the chain of custody. *Burleson, supra,* 306 A.2d at 660–61 (insufficient link to defendant between gun recovered in defendant's brother's car and gun allegedly used by defendant in earlier assault); *Panczko, supra,* 353 F.2d at 679 (although police officer testified that keys were "similar" to those he had recovered at crime scene, another witness testified that he had received the keys after that time from a lieutenant, who did not testify at trial). No such showing was made in the instant case.

Accordingly, we affirm the judgment of conviction.