717 A.2d 323 (1998)
Dawayne M. BROOKS, Appellant,
v.
UNITED STATES, Appellee.
No. 96-CF-1381.
District of Columbia Court of Appeals.
Argued March 24, 1998.
Decided August 27, 1998.
*324 A. Kevin Fahey, Falls Church, VA, appointed by the court, for appellant.
Kimberley S. Knowles, Assistant United States Attorney, for appellee. Mary Lou Leary, United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, Molly A. Meegan, and Renate D. Staley, Assistant United States Attorneys, were on the brief for appellee.
Before TERRY, FARRELL, and KING, Associate Judges.
TERRY, Associate Judge:
Appellant was convicted of possession of cocaine with intent to distribute it, in violation of D.C.Code § 33-541(a)(1) (1993). During the trial, at the conclusion of the government's case, appellant made an oral motion to suppress evidence, which the court denied after hearing argument from both sides. On appeal, appellant contends that the trial court erroneously denied his motion to suppress and that the evidence was insufficient to support his conviction. We affirm.

I
Metropolitan Police Officer John Farr testified that during the early morning hours of February 24, 1993, he and his partner were manning an observation post in an abandoned *325 house at 1322 Park Road, Northwest.[1] There were no lights in the house, but light from the street shone in through at least one window.[2] At approximately 1:20 a.m., while on the second floor of the house, Officer Farr heard the sound of voices downstairs, so he went down to the first floor to see if anyone had entered the house, trying hard to make as little noise as possible. When he reached the first floor, he saw appellant in the front room, standing next to an open window, talking to another man who was outside the house, standing next to the same window. Although he could not hear all the details of their conversation, Officer Farr heard the man outside say, "Give me two." Appellant then reached into "an old refrigerator lying on [its] side" (in the middle of the room) and retrieved a crumpled brown paper bag. At the same time, the man standing outside the house told a companion, also outside, that he "didn't have enough money." Appellant, apparently overhearing this remark, said, "Then you will only get one." Suddenly, before any exchange took place, someone yelled, "Five-O,"[3] and the people outside the window "casually walked away."
Appellant, still holding the paper bag and looking down, walked toward Officer Farr, who had concealed himself in the shadows at the bottom of the stairwell. When appellant was within two feet of him, Farr lunged for the bag, and appellant "pulled back" and dropped the bag to the floor between his feet. Without ever losing sight of the bag, Officer Farr picked it up off the floor[4] and then subdued appellant. Farr's partner ran down from the observation post upstairs, and Farr radioed for backup.
The paper bag recovered by Officer Farr contained eighty-three ziplock bags, each containing in turn a white rock-like substance which turned out to be crack cocaine, as well as several empty ziplock bags.[5] Farr gave the paper bag and its contents to Officer Gregory Bailey for processing. Officer Antonio Womack recovered an additional five ziplock bags with similar contents from appellant's pocket[6] and handed them to Officer Farr. He in turn gave these five ziplock bags, as well as $312 in cash recovered from appellant's coat pocket, to Officer Robert Ingram to seal and process.[7]
Officer Bailey testified that, when he and his partner responded to a call for assistance at 1322 Park Road, Officer Farr handed him a brown paper bag containing eighty-three[8] *326 small ziplock bags, each of which contained a white rock-like substance. Bailey performed a field test on a portion of that substance and "received a positive color reaction for cocaine base." When Bailey told Farr the results of the test, Farr placed appellant formally under arrest. Officer Bailey took the paper bag and its contents to the Fourth District police station, completed the necessary paperworkmaking an entry in the property log and filling out the Drug Enforcement Administration Form DEA-7and then placed everything in a heat-sealed envelope[9] and put the envelope into a "lock box" to be sent to the DEA for analysis.
Officer Myron Smith, accepted by the court as an expert in the distribution and use of narcotics, explained to the jury that most drug transactions involve two or more persons, including a "runner" who initiates the transaction and a "lookout" who watches for and warns of any police presence.[10] Officer Smith testified that the possession of eighty-eight small ziplock bags containing seventy-five to ninety-five milligrams of crack cocaine was not consistent with personal use. He also said that the report of the chain of custody of the drugs seized from appellant "appear[ed] to be in order."
Appellant did not present any evidence. However, at the conclusion of the government's case, defense counsel, for the first time, moved to suppress the crack cocaine found in the paper bag, as well as the crack cocaine recovered from appellant's coat pocket.[11] Counsel argued that Officer Farr lacked probable cause to stop appellant and that Farr knocked the paper bag out of his hand, thereby seizing it without probable cause. In denying the motion, the court credited Officer Farr's testimony, saying:
I find that the defendant dropped the bag as the officer approached, and when the officer approached, the officer had probable cause to believe that the defendant was engaged in the activity of selling contraband drugs. The seizure was lawful. The arrest was lawful. The seizure from the coat was incident to a lawful arrest.
Defense counsel also moved for a judgment of acquittal, arguing inter alia that Officer Farr never made an in-court identification of appellant. The court denied the motion, noting that Officer Farr "referred to your client, but even if he didn't, if you take his testimony and couple it with the other officers, it's sufficient."

II
The principal issue in this case is the sufficiency of the evidence.[12] Appellant argues that the evidence was insufficient to support his conviction because Officer Farr, in court, failed to identify him directly and also failed to identify Government's Exhibit 3the paper bag and the eighty-three ziplocks of crack cocaine that it containedas the contraband he recovered at 1322 Park *327 Road on February 24. Viewing the evidence, as we must, in the light most favorable to the government, giving full play to the right of the jury to determine credibility and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence, see Curry v. United States, 520 A.2d 255, 263 (D.C.1987), we hold that the evidence was sufficient.

A. The Identification of Appellant

The identity of the defendant as the person who committed the charged crime is an essential element that the government must always prove beyond a reasonable doubt. See United States v. Telfaire, 152 U.S.App.D.C. 146, 149, 469 F.2d 552, 555, 559 (1972); United States v. Fenster, 449 F.Supp. 435, 439 (E.D.Mich.1978); CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 5.06 (4th ed.1993). A specific in-court identification by a witness, however, is not always necessary. United States v. Alexander, 48 F.3d 1477, 1490 (9th Cir.), cert. denied, 516 U.S. 878, 116 S.Ct. 210, 133 L.Ed.2d 142 (1995); see State v. Kaba, 217 Neb. 81, 83-87, 349 N.W.2d 627, 630-631 (1984). In some cases "identification may be inferred from all the facts and circumstances that are in evidence." United States v. Weed, 689 F.2d 752, 754 (7th Cir.1982) (citations omitted). Therefore, "a witness need not physically point out a defendant so long as the evidence is sufficient to permit the inference that the person on trial was the person who committed the crime." United States v. Darrell, 629 F.2d 1089, 1091 (5th Cir.1980) (citations omitted). Although we have not expressly adopted this rule, it is not inconsistent with our case law[13] and has been embraced by many other appellate courts, both state and federal. See, e.g., United States v. Morrow, 925 F.2d 779, 781 (4th Cir.1991); United States v. Green, 757 F.2d 116, 119 (7th Cir.1985); United States v. Weed, supra, 689 F.2d at 754-755; Delegal v. United States, 329 F.2d 494 (5th Cir.), cert. denied, 379 U.S. 821, 85 S.Ct. 44, 13 L.Ed.2d 32 (1964); Becker v. State, 298 Ark. 438, 440-442, 768 S.W.2d 527, 529 (1989); People v. King, 151 Ill.App.3d 644, 646-648, 104 Ill. Dec. 827, 829-830, 503 N.E.2d 384, 386-387 (1987); State v. Burton, 615 So.2d 1042, 1046 (La.Ct.App.1993), cert. denied, 516 U.S. 977, 116 S.Ct. 482, 133 L.Ed.2d 409 (1995); State v. Kaba, supra, 217 Neb. at 83-87, 349 N.W.2d at 630-631; State v. Watts, 72 N.C.App. 661, 662-663, 325 S.E.2d 505, 506, review denied, 313 N.C. 611, 332 S.E.2d 83 (1985); State v. Hill, 83 Wash.2d 558, 559-561, 520 P.2d 618, 619 (1974).
In the instant case, although Officer Farr did not directly identify appellant in the courtroom, the record is replete with evidence sufficient to allow the jury to find that the defendant who appeared at trial was the person who committed the acts charged. In the first place, there were no co-defendants, so that any mention of "the defendant" would certainly have denoted appellant Brooks. Officer Farr repeatedly referred to the person he encountered on February 24 at 1322 Park Road as "Mr. Brooks" or "the defendant," and Officers Womack, Bailey, and Ingram expressly identified appellant in court as the person whom Officer Farr subdued and arrested. See United States v. Morrow, supra, 925 F.2d at 781; see also Becker v. State, supra, 298 Ark. at 440-442, 768 S.W.2d at 529 ("the fact that none of [the witnesses] pointed out that the wrong man had been brought to trial was eloquent and sufficient proof of identity"). Also, without objection, the prosecutor repeatedly referred to the defendant throughout the trial as the same Dawayne Brooks who had been involved in the events of February 24. See United States v. Green, supra, 757 F.2d at 119; United States v. Weed, supra, 689 F.2d at 754. Even defense counsel asked Officer Farr on cross-examination, "In the period of time ... when you went into the house until the time you allege that you saw my client, there were many conversations that you could overhear.... Isn't that true?" Moments later, in response to defense counsel's question, "You couldn't see my client at the *328 time [of the encounter]?," Officer Farr said, "Yes, I could see who he was." "[I]n-court identification is not necessary when the defendant's attorney himself identifies his client at trial." United States v. Alexander, supra, 48 F.3d at 1490 (citations omitted).
We strongly agree with the courts in several of the cases we have cited that it is preferable for the prosecutor to ask the witness to identify the defendant in open court,[14] and we urge prosecutors not to omit asking what may seem to them a mere pro forma question. We also agree, however, that the identity of the defendant may be inferred from all the evidence before the jury, as these and other cases consistently hold. Thus in this case the court did not err in denying appellant's motion for judgment of acquittal on the ground that Officer Farr failed to make a specific in-court identification of appellant.

B. The Narcotics

After handing Officer Farr the heat-sealed envelope and its contents which constituted Government's Exhibit 3 (see note 5, supra), the prosecutor began to question him about those contents. In response to the question, "Do those [ziplock bags containing drugs] appear to be similar to the ones you recovered from the brown paper bag on February 24th?", Officer Farr said, "Yes, they are" (emphasis added). Appellant takes issue with the phrase "appear to be similar" and argues this was insufficient to establish a chain of custody. This argument is meritless, for at least two reasons. First, it misreads the testimony. Officer Farr's answer was not that the drugs appeared to be similar to the ones he recovered, but rather that they were in fact the actual drugs. Second, whether Officer Farr testified that the drugs appeared to be similar or that they were in fact the same, any interpretation that a trier of fact might give to such potential variations in the testimony would affect only its weight, not its admissibility. See Guishard v. United States, 669 A.2d 1306, 1312 (D.C.1995); Turney v. United States, 626 A.2d 872, 874 (D.C.1993) (evidence held to be sufficient when, in response to questions whether the drugs in the heat-sealed envelope looked "the same or similar" to the drugs seized, each officer said they did).
Appellant's contention regarding Government's Exhibit 3 is not actually a sufficiency challenge, but rather an admissibility challenge. Therefore, the only question before us is whether the trial court abused its discretion by admitting the paper bag and its contents into evidence over defense counsel's objection. See Brown v. United States, 567 A.2d 426, 427 (D.C.1989), cert. denied, 494 U.S. 1037, 110 S.Ct. 1497, 108 L.Ed.2d 632 (1990). "It is generally recognized that tangible objects become admissible in evidence only when proof of their original acquisition and subsequent custody forges their connection with the accused and the criminal offense." Gass v. United States, 135 U.S.App.D.C. 11, 14 n. 8, 416 F.2d 767, 770 n. 8 (1969) (citations omitted); see Turney v. United States, supra, 626 A.2d at 873. However, "when the item has been in the possession of government officials charged with its keeping, the court may assume, absent evidence of tampering, that the officials properly discharged their duties." Ford v. United States, 396 A.2d 191, 194 (D.C.1978); accord, e.g., Spencer v. District of Columbia, 615 A.2d 586, 589 (D.C.1992).
In this case, each officer who handled the drugs found in the paper bag identified by name the person from whom he received the drugs and described what he did with them, up to the time the drugs were placed in the heat-sealed envelope and secured for analysis by the chemist. After reviewing the report of the chain of custody, Officer Smith, the government's expert witness, testified that it appeared to be in order. In addition, there was no evidence of tampering, *329 nor was there any time period, from the seizure to the trial, during which the evidence was unaccounted for. See Turney v. United States, supra, 626 A.2d at 875. These facts, "coupled with the normal presumption of regularity, entitled the trial judge permissibly to exercise his discretion in favor of admitting the evidence." Ford v. United States, supra, 396 A.2d at 195 (citation omitted). We find no error.
Appellant's conviction is therefore
Affirmed.
NOTES
[1] Appellant notes that the police did not have a search warrant for the premises at 1322 Park Road. However, since appellant never claimed an interest in those premises and, at the time of his arrest, readily admitted living in Maryland, this fact is irrelevant to the instant appeal. See Lewis v. United States, 594 A.2d 542, 545-546 (D.C.1991) (defendant cannot challenge officers' presence in a dwelling in which he has no residential or possessory interest), cert. denied, 502 U.S. 1115, 112 S.Ct. 1225, 117 L.Ed.2d 460 (1992).
[2] Three of the four windows on the front of the house were boarded up. Officer Farr testified that light came in through the fourth window and through the open front door.
[3] Officer Farr testified that "Five-O" was a term used to signal that police officers were in the area.
[4] Officer Farr testified that he had no doubt that the bag he picked up was the same bag that appellant had been holding in his hand when he was conversing with the man outside the window, and the same bag that appellant had let fall to the floor.
[5] The prosecutor showed Officer Farr Government's Exhibit 3, a heat-sealed envelope containing a brown paper bag, ziplock bags, narcotics, and a chemist's report stating, among other things, the type, weight, and purity of the cocaine. Officer Farr testified that the paper bag "appear[ed] to be" the same paper bag that he recovered on February 24.
[6] Officer Womack identified Government's Exhibit 4 as the heat-sealed envelope containing those five ziplock bags. The outside of the envelope bore Womack's handwriting and signature.
[7] Officer Ingram testified that Officer Farr gave him the five bags and the money. Ingram placed the five bags in a heat-sealed envelope and then put the envelope into a "drop box." He also saw another officer enter the evidence in the property book. At trial Officer Ingram identified Government's Exhibit 4 as the heat-sealed envelope containing the five bags of cocaine recovered from appellant; Ingram's handwriting and signature were on the envelope. He also identified Government's Exhibit 5 as the envelope containing the money recovered from appellant.
[8] Officer Bailey said that when he first inventoried the contents of the paper bag, he counted eighty-two ziplocks. However, when he again inventoried the contents at the police station, he counted eighty-three ziplocks.
[9] Officer Bailey identified Government's Exhibit 3, which bore his signature, as the heat-sealed envelope containing the items given to him by Officer Farr on February 24.
[10] Officer Smith noted that "lookouts" are also concerned about the presence of "stick-up boys"i.e., individuals who try to steal drugs and money.
[11] Motions to suppress must be made before trial unless the defendant can show good cause for failure to do so. D.C.Code § 23-104(a)(2) (1996); Super.Ct.Crim.R. 12(b)(3); see Duddles v. United States, 399 A.2d 59, 64 (D.C.1979). However, since the trial court, without opposition from the government, considered the motion on its merits, we shall not explore whether good cause existed.
[12] We reject appellant's challenge to the seizure of the paper bag. The trial court, expressly crediting the testimony of Officer Farr, held that Farran experienced narcotics officerhad probable cause to arrest appellant (and hence to seize the paper bag) after he saw and heard the events at the window. We agree. See, e.g., Tobias v. United States, 375 A.2d 491, 494 (D.C.1977); Peterkin v. United States, 281 A.2d 567, 568 (D.C. 1971), cert. denied, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972); Davis v. United States, 133 U.S.App. D.C. 172, 174, 409 F.2d 458, 460 ("conduct innocent in the eyes of the untrained may carry entirely different `messages' to the experienced or trained observer" (footnote omitted)), cert. denied, 395 U.S. 949, 89 S.Ct. 2031, 23 L.Ed.2d 469 (1969). We hold accordingly that the court did not err in denying appellant's motion to suppress evidence, and thus we need not consider the government's alternative argument that appellant abandoned the bag by dropping it. See California v. Hodari D., 499 U.S. 621, 629, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).
[13] The test for the sufficiency of identification evidence "is whether a reasonable person could find the identification convincing beyond a reasonable doubt, given the surrounding circumstances." Beatty v. United States, 544 A.2d 699, 701 (D.C.1988) (citations omitted); accord, e.g., Hill v. United States, 541 A.2d 1285, 1287 (D.C. 1988).
[14] E.g., Delegal v. United States, 329 F.2d at 494 ("it would have been better if the witness ... had pointed out the appellant as the person to whom [the contraband] was delivered"); State v. Kaba, 217 Neb. at 85, 349 N.W.2d at 630 ("it is better practice for a prosecuting attorney to specifically ask a witness to make an in-court identification of a defendant"); State v. Hill, 83 Wash.2d at 560, 520 P.2d at 619 ("we do not recommend the omission of specific in-court identification where feasible").