José E. GARCIA, Appellant

v.

UNITED STATES, Appellee.

No. 00–CF–978, 00–CF–979.

District of Columbia Court of Appeals.

Submitted March 9, 2004.

Decided April 27, 2006.

Josselin Saint–Preux, appointed by the court, was on the brief for appellant.

Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Elizabeth Trosman and Robert J. Feitel, Assistant United States Attorneys, were on the brief for appellee.

Before FARRELL, Associate Judge, and PRYOR and TERRY, Senior Judges.*

TERRY, Senior Judge:

After a jury trial, appellant was convicted of distributing a controlled substance (crack cocaine) and violating the Bail Reform Act ("BRA"). On appeal he argues (1) that the evidence was insufficient to convict him of distributing cocaine, and (2) that the trial court erred in denying his motion to sever the two offenses for trial. We find both arguments without merit; hence we affirm both convictions.

I

A. *The evidence on the cocaine charge*

On a July afternoon, shortly before 3:00 p.m., in the 1600 block of Columbia Road, N.W., appellant approached three undercover police officers who were sitting in an unmarked Jeep Cherokee. Officer Jer-

---

* Judge Terry was an Associate Judge of the court at the time this case was submitted. His status changed to Senior Judge on February 1, 2006.

mone McClinton asked appellant if he had a $10 rock of crack cocaine, but appellant replied that he had only a $20 rock. He then told the officers to wait, and as they waited, appellant walked up the street and spoke with Julian Fuentes.[1] Fuentes reached into a plastic bag and gave appellant a small round ball of silver-colored foil. When appellant returned, he handed the foil to Officer Stephanie Garner, who in the meantime had stepped out of the Jeep Cherokee and was standing on the sidewalk. She gave appellant $10 in pre-recorded police department funds and started to walk away, but appellant stopped her because she still owed him another $10. Officer Garner then handed the foil back to appellant and went over to the Jeep to get more pre-recorded money.

When Officer Garner returned, appellant was leaning against a blue Chevrolet. The officer testified that as she gave appellant the additional money, "he pointed to the back of the trunk and there was the silver ball." She picked it up, opened it, and found inside the foil wrapping a white rock-like substance. She took it back to the Jeep and performed a field test on the rock while the other two officers detained appellant and Fuentes. After the rock tested positive for cocaine, appellant and Fuentes were formally placed under arrest.[2]

Later, at the police station, Officer Garner gave the rock and the foil to Officer Ronzell Baker, who placed both items into a heat-sealed bag. This bag was then sent to the Drug Enforcement Administration ("DEA") laboratory for analysis. The DEA analysis confirmed that the substance wrapped in the foil was cocaine base—eighty-four percent pure, with a net weight of 130 milligrams. At trial, Officer Baker testified that he wrote the wrong laboratory number on the paperwork he prepared for this case. The correct number was HZ–287, but Officer Baker wrote "HZ–289" instead. He explained that HZ–289, which appeared only once in his report, referred to a different case that involved heroin, and that it had no relation to appellant's case.

Defense counsel did not object when the cocaine and the DEA analysis were admitted into evidence. However, after the government concluded its case on both counts,[3] counsel made a chain of custody objection. The trial court overruled the objection because Officer Baker's testimony showed that he had merely "misnumbered" the paperwork but had not "mishandled" the evidence. The court also noted that when the misnumbering was discovered, "the correct lab number was used and the correct drugs were analyzed."

### B. *Severance*

At the beginning of trial, during jury selection, defense counsel made a motion

---

1. Mr. Fuentes was jointly indicted and tried with appellant as a co-defendant. The jury, however, was unable to agree on a verdict as to the only offense with which Fuentes was charged (distribution of cocaine), and on that charge the court declared a mistrial. Fuentes is therefore not a party in the present appeal.

2. Appellant states in his brief that "the testimony of Officer Garner is clear that she did not test the initial foil paper containing a substance that was allegedly handed to her by defendant. Since the content of the foil was not tested, the defendant could not be guilty

...." This statement is inaccurate, because Officer Garner testified: "I was in the car field testing the drugs to make sure it was actually field testing positive.... [I]f it gives ... a blue color reaction, then it field tests positive for cocaine.... And it field tested positive for cocaine."

3. The government also presented evidence on the BRA charge. However, since appellant does not challenge the sufficiency or admissibility of that evidence, we need not summarize it here.

to limit the cross-examination of appellant to the BRA violation. The court denied the motion, stating:

> If he gets on the witness stand, there is no legal reason for me to limit the cross-examination. Indeed, because one charge flows from the other, the government has every right to ask about both of the matters.

There was no further discussion of counsel's request at that time.[4]

When the government concluded its case on the cocaine charge, the court asked defense counsel if he would be calling any witnesses. Counsel replied, "My client wants to testify as to the BRA." The court then asked appellant if he wanted to testify, and appellant replied, "Just regarding one matter about not appearing in court." The court explained, "You'll have an opportunity to testify, but I'm not going to tell you the prosecutor might not ask you about the drug thing. Very well. [He] may ask you about that." Neither appellant nor his counsel responded to the court's statement.

At the close of the government's case on the BRA violation, the court again asked defense counsel if he would be calling any witnesses. Counsel replied, "No, your honor." The court also asked appellant if he understood that he had a right to testify. Appellant responded, "May I talk with my lawyer?" While appellant conferred with counsel, counsel for co-defendant Fuentes made a renewed motion to sever the trials of the defendants.[5] During the discussion of that motion, the court stated:

[Appellant's counsel], in representing his client, has advanced his own reason for wanting a severance. Obviously, a different reason. He wants a severance because he believes he's embarrassing [sic] in testifying about the drug transaction—correction, testifying if he were to testify to deny the BRA, that he would then be asked about his involvement or not in the drug distribution charge.

\*     \*     \*     \*     \*     \*

So I mean … it's difficult for me to understand why Mr. Garcia in the circumstances wouldn't want to testify in the case. On the other hand, that's his right, to testify or not testify. I do not believe … that any embarrassment or confoundment that he may find himself in should influence my decision whether to sever these cases or not, when the evidence is very, very clear that the cases ought to be tried together.

After making these statements, the court again asked appellant whether he wanted to testify, to which he replied, "No." The court then denied Fuentes' motion.

## II

■ Appellant contends that there was insufficient evidence to convict him of distributing cocaine. In reviewing such a claim, this court "must view all the evidence in the light most favorable to the government, keeping in mind the jury's right to assess credibility and to draw reasonable inferences from the evidence it has heard." *Nelson v. United States*, 601

---

4. The government argues that because appellant never made a specific motion for severance of offenses, we should review his present claim of error in denying severance under a plain error standard. It is clear to us, however, that in the context of his motion to limit cross-examination, appellant was raising a severance issue. That was certainly the way the court understood the discussion, and we

likewise conclude that the motion to limit cross-examination was, in substance, a severance motion.

5. Previously, Fuentes' counsel had made a motion to sever defendants because there was a possibility that appellant might be called as a witness for Fuentes. That motion was denied.

A.2d 582, 593 (D.C.1991) (citations omitted); *accord, e.g., Curry v. United States,* 520 A.2d 255, 263 (D.C.1987). "Reversal is warranted only if there is no evidence whatever upon which a reasonable trier of fact might fairly find guilt beyond a reasonable doubt." *Johnson v. United States,* 820 A.2d 551, 560 (D.C.2003) (citations omitted); *accord, e.g., Gibson v. United States,* 792 A.2d 1059, 1065 (D.C.), *cert. denied,* 536 U.S. 972, 122 S.Ct. 2692, 153 L.Ed.2d 861 (2002). "The evidence need not compel a finding of guilt or negate every possible inference of innocence." *Lattimore v. United States,* 684 A.2d 357, 359 (D.C.1996). Furthermore, this court does not distinguish between direct and circumstantial evidence. *E.g., Curry,* 520 A.2d at 263.

Appellant argues that he could not be convicted of distribution because he did not actually hand the cocaine to the officer; instead, the officer picked it up from the trunk lid of the Chevrolet, and no one saw who put it there.[6] The crime of distribution has two elements: (1) "[t]hat the defendant distributed a controlled substance," and (2) "[t]hat the defendant distributed the controlled substance knowingly and intentionally." CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.30 (4th ed. 1996 Supp.); *see also* D.C.Code § 48–904.01(a)(1) (2001). Distribution is defined by statute as "the actual, constructive, or attempted transfer from one person to another other than by administering or dispensing of a controlled substance, whether or not there is any agency relationship." D.C.Code § 48–901.02(9) (2001); *see also Long v. United States,* 623 A.2d 1144, 1147

(D.C.1993) (defining "transfer" as "to carry or take from one person or place to another"). Appellant's argument fails because the statute "proscribes ... any act effecting the transfer of narcotics from one person to another," *Minor v. United States,* 623 A.2d 1182, 1186 (D.C.1993) (citations omitted); *see also Durham v. United States,* 743 A.2d 196, 201 (D.C. 1999) ("any act of giving narcotics to another person constitutes an act of unlawful distribution" (citations omitted)). "Any act" would certainly include what happened in this case. When Officer Garner returned with the additional $10, appellant accepted the money and pointed to the rolled-up piece of foil which was lying on top of the trunk of the car against which he was leaning. Although appellant did not actually hand the foil to the officer, we hold that the act of directing the officer's attention to it, with the obvious expectation that she would pick it up, was a transfer under the statute; more precisely, it became a transfer when the officer picked it up. *See Durham,* 743 A.2d at 201 ("the Code itself does not distinguish among types of transfers between parties" (citations omitted)).

Next, appellant maintains that Officer Baker's admitted mistake in writing down the laboratory number (HZ–289 instead of HZ–287) in preparing the paperwork for the DEA analysis "undermined and created [a] serious legal issue regarding the chain of custody of the alleged controlled substance ...." Although appellant makes this argument as part of his insufficiency claim, it is really a challenge to the admissibility of the DEA evidence. *See Brooks v. United States,* 717 A.2d 323, 328 (D.C.

---

**6.** Appellant also states in his brief that "there was no testimony or evidence to infer that the item picked up by [Officer Garner] was the same or identical to the foil paper handed over to her a few minutes before the first encounter." This appears to be an admission by appellant that there was a prior transfer.

The government notes this flaw in appellant's argument and states that the "initial transfer of cocaine was completed, and would be sufficient to sustain the conviction." Although the government is probably correct, we need not base our decision on this apparent admission.

1998). We find it meritless in any event, regardless of how it is characterized.

    The trial court has broad discretion to determine the admissibility of physical evidence. *Ford v. United States,* 396 A.2d 191, 194 (D.C.1978); *see also, e.g., Johnson v. United States,* 452 A.2d 959, 960 (D.C.1982). "In exercising that discretion, the court 'must be satisfied that in reasonable probability the article has not been changed in important aspects.'" *Gilmore v. United States,* 742 A.2d 862, 871 (D.C.1999) (citing *Ford* ). Officer Baker's testimony showed that the misnumbering did not affect the chain of custody of the evidence, but only the paperwork relating to it.[7] Appellant had the burden "to introduce evidence that the routine handling of the evidence by the government did not suitably preserve [it] ... by making 'a minimal showing of ill will, bad faith, other evil motivation, or some evidence of tampering.'" *German v. United States,* 525 A.2d 596, 610 (D.C.1987) (citations omitted). Although appellant's counsel cross-examined Officer Baker about the misnumbering, he did not present any evidence suggesting that either the foil wrapper or its contents had been altered. *See Benton v. United States,* 815 A.2d 371, 374 (D.C. 2003) ("No suggestion of tampering was made ... and so nothing rebutted the presumption that the object [appellant] sold was the substance eventually identified by the DEA as cocaine"); *Gilmore,* 742 A.2d at 872 (burden not met when counsel "insinuated through his cross-examination" of police officer that evidence had been tampered with, but "offered no actual evidence"). We hold, therefore, that the trial court did not abuse its discretion in admitting the cocaine and the DEA report. *See, e.g., Turney v. United States,*

626 A.2d 872, 874 (D.C.1993) (police officers' testimony was "sufficient evidence to establish the chain of custody of the drugs"). Additionally, even if appellant had established a break in the chain of custody (which he did not do), such a break would affect only the weight to be given to the evidence, not its admissibility. *E.g., In re D.S.,* 747 A.2d 1182, 1187 (D.C. 2000); *Key v. United States,* 587 A.2d 1072, 1074 (D.C.1991).

## III

    Rule 8 (a) of the Superior Court Rules of Criminal Procedure "allows joinder of different offenses committed by one defendant." *Ray v. United States,* 472 A.2d 854, 857 (D.C.1984). When two offenses are properly joined, Rule 14 allows the trial court to sever the offenses if the joinder will result in prejudice. *See Bond v. United States,* 614 A.2d 892, 895 (D.C. 1992); *Gooch v. United States,* 609 A.2d 259, 264 (D.C.1992); D.C.Code § 23–313 (2001). This court will reverse the trial court's denial of a Rule 14 motion only when there has been an abuse of discretion. *See, e.g., Arnold v. United States,* 511 A.2d 399, 404 (D.C.1986); *Ray,* 472 A.2d at 857. Appellant contends that he was prejudiced by the trial court's denial of his request for severance. We hold that appellant has not made a sufficient showing of prejudice to warrant reversal.

    Appellant's main assertion is that "joinder of the charge of distribution of cocaine and violation of [the] Bail Reform Act in a single trial was unfairly prejudicial because Defendant was unable to testify as to the BRA charge and remain silent as to the distribution charge." In reviewing similar claims in the past, however, this court has said:

---

7. Appellant suggests in his brief that the substance found in the foil wrapper tested positive for both heroin and cocaine. This is incorrect. As Officer Baker's testimony showed, the foil and its contents tested positive only for cocaine. The DEA did not find any heroin in or on the foil; the reference to heroin related to another case.

[I]t is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against defendant's interest in having a free choice with respect to testifying.

*Roy v. United States,* 652 A.2d 1098, 1108 (D.C.1995) (citation omitted); *see also Arnold,* 511 A.2d at 406. Thus "no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *Baker v. United States,* 131 U.S.App. D.C. 7, 25–26, 401 F.2d 958, 976–977 (1968); *see also Shotikare v. United States,* 779 A.2d 335, 340 (D.C.2001) (appellant must make "a sufficient showing of such prejudice"). Although appellant states in his brief that he "proffered sufficient evidence to the trial court why he needed to refrain from [testifying on] the distribution of controlled substance charge," there is nothing in the record showing that he put forth any reason why he could not testify. The only statements that appellant and his counsel made to the trial court were that appellant wanted to testify regarding the BRA charge, but not the cocaine charge. That was simply not enough. "[M]ore is required for severance than the defendant's desire to testify as to one offense but not another." *Fields v. United States,* 698 A.2d 485, 490 (D.C.1997), *cert. denied,* 523 U.S. 1012, 118 S.Ct. 1203, 140 L.Ed.2d 331 (1998) (citing *Roy,* 652 A.2d at 1108).

For these reasons we find no abuse of discretion in the trial court's refusal to sever the two offenses.

## IV

The judgment of conviction in each of appellant's two cases is

*Affirmed.*